Jeffrey W. Dulberg (State Bar No. 181200)
John W. Lucas (State Bar No. 271038)
Jeffrey P. Nolan (State Bar No. 158923)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone: 310-277-6910
Facsimile: 310-201-0760
Email: jdulberg@pszjlaw.com
   jlucas@pszjlaw.com
   jnolan@pszjlaw.com

Attorneys for Plaintiff, Bradley D. Sharp,
Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 23-10990-SK |
| LESLIE KLEIN, | Chapter 11 |
| Debtor. | Adv. No. 2:23-ap-01167-SK |
| BRADLEY D. SHARP, Chapter 11 Trustee, | **NOTICE OF MOTION AND PLAINTIFF BRADLEY D. SHARP, CHAPTER 11 TRUSTEE'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION AS AGAINST DEFENDANTS KENNETH KLEIN AND SHOSHANA KLEIN** |
| Plaintiff, | |
| vs. | |
| KENNETH KLEIN, aka KENNETH KOLEV KLEIN, aka KENNETH K. KLEIN, aka KEN KLEIN, an individual; SHOSHANA SHIFRA KLEIN, aka SHOSHANA KLEIN, aka SHOSHANA S. KLEIN, an individual, | [Fed. R. Bankr. Proc. 56] |
| | Hearing: |
| Defendants. | Date: TBD |
| | Time: TBD |
| | Place: Edward R. Roybal Federal Building and Courthouse 255 E. Temple Street, Courtroom 1575 Los Angeles, CA 90012 |
| | Judge: Honorable Sandra R. Klein |

**TO THE HONORABLE SANDRA KLEIN, UNITED STATES BANKRUPTCY JUDGE,**

**AND TO ALL COUNSEL OF RECORD:**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**PLEASE TAKE NOTICE** that at __:_0_.m. on _____ __, 2024, or as soon thereafter as this matter may be heard before the Honorable Sandra Klein, United States Bankruptcy Judge, in Courtroom 1575 of the above-captioned Court, Plaintiff Bradley D. Sharp, as trustee ("Plaintiff" or the "Trustee") for the chapter 11 estate of Leslie Klein (the "Debtor"), will and hereby does move the Court for entry of summary judgment, or in the alternative summary adjudications, in the Trustee's favor and against each of the above-captioned defendants, Kenneth Klein ("Kenneth") and Shoshana Shifra Klein ("Shoshana") (collectively, the "Defendants") on all claims for relief set forth in that certain *First Amended Complaint for Avoidance and Recovery of Fraudulent Transfers* [Adv. Docket No. 21][1] (the "Complaint").[2]

The Trustee commenced this action seeking to (i) avoid the transfer of that certain property located at 306 N. Highland Ave., Los Angeles, California, pursuant to sections 11 U.S.C. §§ 544 and 550 and Cal. Civ. Code §§ 3439.04(a)(1), (a)(2), and 3439.07, and (ii) recover the estate's interest in the Property, pursuant to section 550 of the Bankruptcy Code. As discussed herein, the Trustee contends that none of the material facts relevant to this Motion are in dispute and that he is entitled to judgment, as a matter of law, on all of the claims for relief set forth in the Complaint.

This Motion is based upon this Notice, the Memorandum of Points and Authorities attached hereto, the Declarations of Jeffrey P. Nolan, Nicholas R. Troszak, and Paul Shields, attached hereto, the Joint Statement of Uncontroverted Facts ("JSOF"), Plaintiff's Additional Statement of Uncontroverted Facts ("ASOF"), and Request for Judicial Notice ("RJN") filed currently herewith, the pleadings and other papers filed in this adversary proceeding and in the chapter 11 case to which it relates, and such further evidence and argument as may be presented at or prior to the hearing on the Motion.

---

[1] All references herein to "Bankr. Docket No. ___" are to the docket entries Case No. 23-10990-SK. All references herein to "Adv. Docket No. ___" are to the docket entries in Adv. Case No.: 2:24-ap-01167-SK.

[2] All capitalized terms not defined herein have the meanings ascribed to them in the Complaint.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PLEASE TAKE FURTHER NOTICE that pursuant to Local Bankruptcy Rule 7056-1(c), objections and responses, if any, to the Motion shall be filed with the Court and served on Plaintiff's counsel **at least twenty-one (21) days prior to the hearing date**.

PACHULSKI STANG ZIEHL & JONES LLP

Dated:  November 8, 2024

By    _/s/ Jeffrey P. Nolan_
Jeffrey W. Dulberg
John W. Lucas
Jeffrey P. Nolan

Attorneys for Plaintiff, Bradley D. Sharp, Chapter 11 Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TABLE OF CONTENTS**

I.      INTRODUCTION...................................................................................................1

II.     PROCEDURAL STATEMENT ..........................................................................3

        A.      Filing Of The Bankruptcy Case ...............................................................3

        B.      Adversary Proceeding ..............................................................................3

III.    STATEMENT OF UNDISPUTED MATERIAL FACTS...................................3

        A.      The Debtor Purchases the Property ..........................................................3

        B.      The Multitude Of Lawsuits Filed Against The Debtor Between 2012 And
                February 2021 ...........................................................................................4

        C.      The Debtor Defaults And His Financial Difficulties In 2020/2021 .........9

        D.      The February 12, 2021, Transfer Recorded As A Bona Fide Gift For No
                Consideration Received ..........................................................................10

IV.     ARGUMENT .....................................................................................................11

        A.      Summary Judgment Standard..................................................................11

        B.      The First Claim for Relief:  The Transfer Was Made With Actual Intent To
                Defraud Creditors Pursuant To California Civil Code § 3439.04(a)(1)...12

                (1)     The CUVTA Serves the Valuable Purpose of Protecting Creditors
                        From Schemes to Place Assets Beyond Their Reach and is to Be
                        Liberally Interpreted...................................................................12

                (2)     Defendants Received The Transfer From The Debtor On The Date
                        The Deed Was Recorded:  February 12, 2021 ............................14

                (3)     The Transfer Was Made With Actual Intent To Hinder, Delay And
                        Defraud........................................................................................15

        C.      The Third Claim for Relief:  The Transfer Was Constructively Fraudulent
                Under California Civil Code § 3439.04(a)(2)(B)......................................30

        D.      The Second And Fourth Claims For Relief:  Pursuant To 11 U.S.C. §550(A)
                And California Civil Code § 3439.07, The Property Must Be Returned To
                The Bankruptcy Estate ............................................................................33

V.      CONCLUSION ..................................................................................................35

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

1

# **TABLE OF AUTHORITIES**

**Page**

2

3

## **CASES**

4

*AAAG-California, LLC v. Kisana*,
    553 F. Supp. 3d 1042 (Dist. Utah, 2021)....................................................29

*Aalfs v. Wirum (In re Straightline Invs., Inc.)*,
    525 F.3d 870  (9th Cir.2008) ........................................................................34

*Aghaian v. Minassian*,
    59 Cal. App. 5th 447 (2020).........................................................................13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................11, 34

*Anderson v. N. Telecom, Inc.*,
    52 F.3d 810  (9th Cir. 1995).........................................................................12

*Ash v. Moldo*,
    2006 Bankr. LEXIS 4855 (9th Cir. BAP 2006) ............................................23

*Bay State Milling Co. v. Martin*,
    2001 U.S. Dist. LEXIS 3402, (N.D. Ill. 2001) .............................................27

*Begier v. I.R.S.*,
    496 U.S. 53, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990) ...............................14

*Borgfeldt v. Curry*,
    25 Cal. App. 624, 144 P. 976  (Cal. App. 1st Dist. 1914).......................13, 21

*Brun v. Madray (In re Brun)*,
    360 B.R. 669  (Bankr. C.D. Cal. 2007) ...................................................33, 34

*Carloss v. County of Alameda*,1st District Court of Appeal
    242 Cal. App. 4th 116 (2015) .......................................................................15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ....................................................................................11

*Chen v. Berenjian*,
    33 Cal. App. 5th 811 ....................................................................................13

*Damian v. A Mark Precious Metals, Inc.*,
    2017 U.S. Dist. LEXIS 216117  (C.D. Cal 2017) .........................................29

*Decker v. Voisenat (In re Serrato)*,
    214 B.R. 219 (Bankr. N.D. Cal. 1997).........................................................18

*Durkin v. Shields (In re Imperial Corp. of Am.)*,
    1997 U.S. Dist. LEXIS 20942 (S.D.N.Y. 1997) ...........................................14

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Ehring v. W. Cmty. Moneycenter (In re Ehring)*,
    91 B.R. 897  (9th Cir. B.A.P. 1988), aff'd, 900 F.2d 184 (9th Cir. 1990)........................ 15

*Ezra v. Secor (In re Ezra)*,
    537 B.R. 924 (9th Cir. B.A.P. 2015) ......................................................................... 20, 21

*Filip v. Bucurenciu*,
    129 Cal.App.4th 825, 28 Cal. Rptr. 3d 884 (2005) ................................................. 17, 18

*Gahn v. United States*,
    1996 U.S. Dist. LEXIS 9069 ( W.D. Wash. 1996) ......................................................... 20

*Gill v. Stern (In re Stern)*,
    345 F.3d 1036 (9th Cir. 2003) ....................................................................................... 13

*Gotlieb v. Rose(In re Khalil)*,
    2015 Bankr. LEXIS 1976  (Bankr. C.D. Cal. 2017) ...................................................... 16

*Grace v. Bank Leumi Trust Co.*,
    443 F.3d 180  (2nd Cir. 2006) ....................................................................................... 34

*Harman v. First Am. Bank of Maryland (In re Jeffrey Bigelow Design Group, Inc.)*,
    956 F.2d 479 (4th Cir. 1992).......................................................................................... 23

*Hasse v. Rainsdon (In re Pringle)*,
    495 B.R. 447  (9th Cir. BAP 2013) ................................................................................ 22

*Heller Ehrman LLP. v. Jones Day (In re Heller Ehrman, LLP)*,
    2013 Bankr. LEXIS 889, *37-38 ................................................................................... 31

*In re Acequia, Inc.*,
    34 F.3d 800 (9th Cir. 1994) ..................................................................................... 18, 27

*In re Agric. Research & Tech. Grp., Inc.*,
    916 F.2d 528  (9th Cir. 1990) ........................................................................................ 28

*In re Bayou Grp., LLC*,
    439 B.R. 284 (S.D.N.Y. 2010) ...................................................................................... 13

*In re Bernard L. Madoff Inv. Sec. LLC*,
    2011 U.S. Dist. LEXIS 97647 (S.D.N.Y. Aug. 31, 2011) ............................................ 13

*In re Cohen*,
    199 B.R. 709  (B.A.P. 9th Cir. 1996) ....................................................................... 12, 13

*In re Garoian*,
    2014 Bankr. LEXIS 5254 (Bankr. C.D. Cal. Oct. 7, 2014) .......................................... 13

*In re Imperial Corp. of Am.*,
    No. 92-1003-IEG (LSP), 1997 U.S. Dist. LEXIS 20943 (S.D. Cal. Aug. 12, 1997).......... 28

*In re Marriage of Brooks & Robinson*
    (2008) 169 Cal. App. 4th 176................................................................................... 16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*In re Marriage of Fossum*
(2011) 192 Cal.App.4th 336, 121 Cal. Rptr. 3d 195 ........................................................ 15

*In re Moskowitz*,
10-73348-WLH, 2011 Bankr. LEXIS 4800, 2011 WL 6176210
(Bankr. N.D. Ga. Nov. 28, 2011) .................................................................................. 28

*In re Nieves*,
648 F.3d 232 (4th Cir. 2011)........................................................................................ 28

*In re Ronduen*,
2023 U.S. Dist. LEXIS 116337 (C.D. Cal. July 6, 2023) ............................................ 19

*In re Vortex Fishing Systems, Inc.*,
277 F.3d 1057 (9th Cir. 2002)...................................................................................... 25

*In re Walldesign, Inc.*
2017 U.S. Dist. LEXIS 50947, *6 (C.D. 2017)......................................................... 16, 18

*Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*,
263 B.R. 406  (S.D.N.Y. 2001) .................................................................................... 23

*Kasolas v. Nicholson (In re Fox Ortega Enters.)*,
621 B.R. 425  (Bankr. N.D. Cal. 2021) ........................................................................ 28

*Kelleher v. Kelleher*,
2014 U.S. Dist. LEXIS 36330 (N.D. Cal. 2014) ......................................................... 18

*Keller v. Keller (In re Keller)*,
185 B.R. 796 (9th Cir. B.A.P. 1995) ............................................................................ 14

*Kelly v. Armstrong*,
141 F.3d 799 (8th Cir. 1998)........................................................................................ 27

*Kirkeby v. Super. Ct. of Orange County*,
33 Cal. 4th 642, 15 Cal. Rptr. 3d 805, 93 P.3d 395 (Cal. 2004) ............................... 13

*Lo v. Lee, supra*,
24 Cal.App.5th ............................................................................................................. 13

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574  (1986) .................................................................................................... 12

*Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*,
926 F.2d 1248  (1st Cir. 1991) ..................................................................................... 18

*Mende v. Dun & Bradstreet, Inc.*,
670 F.2d 129 (9th Cir. 1982)........................................................................................ 12

*Menick v. Goldy*,
131 Cal. App. 2d 54, 280 P.2d 844 (1955)................................................................. 17

*Nordberg v. Republic Nat'l Bank (In re Chase & Sanborn Corp.)*,
51 Bankr. 739 (Bankr. S.D. Fla. 1985) ...................................................................... 21

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Parker v. Titan Mining (US) Corp. (In re Star Mt. Res., Inc.)*
    2022 Bankr. LEXIS 1000 (Bankr. AZ 2022) ................................................................ 34

*Pritchard v. Brown (In re Brown)*,
    118 Bankr. 57  (Bankr. N.D. Tex. 1990) .................................................................... 33

*Ritchie Capital Mgmt., LLC v. Stoebner*,
    779 F.3d 857, 863 (8th Cir. 2015) ........................................................................ 23, 27

*S. New Eng. Tel. Co. v. Sahara & Arden, Inc.*,
    2010 U.S. Dist. LEXIS 51178 (Dist. Nev. May 24, 2010) ................................. 19, 27

*Salven v. Mendez (In re Mendez)*,
    2008 Bankr. LEXIS 653 (Bankr ED CA 2008) ................................................... 13, 23

*Sarigianides v. Micromark Internat., Inc.*,
    2009 Cal. Super. LEXIS 3408 .................................................................................. 25

*SEC v. Med. Capital Holdings*,
    2014 U.S. Dist. LEXIS 90586  (Dist. C.D. Cal. 2014) ........................................... 28

*Sharp v. Roscoe's Intellectual Props. LLC (In re East Coast Foods, Inc.)*,
    2017 Bankr. LEXIS 2410 (Bankr. C.D. CA 2017) ............................................... 20

*Stein v. Duenas*
    (2015) 2015 Tex. App. LEXIS 8502, *14 ............................................................... 27

*Tatung Co. v. Shu Tze Hsu*,
    217 F. Supp. 3d 1138 (C.D. Cal. 2016) ................................................................. 13

*Thomas v. Peterson*,
    (1931) 213 C. 672, 3 P.2d. 306) ............................................................................. 15

*United States v. 5208 Los Franciscos Way*,
    385 F.3d 1187  (9th Cir. BAP 2004 ....................................................................... 21

*United States v. Boyce*,
    742 F.3d 792, 134 S.Ct. 2321 (2014) ..................................................................... 18

*United States v. Dubey*,
    1998 U.S. Dist. LEXIS 17512  (E.D. Cal. 1998) .................................................. 25

*USAA Fed. Savings Bank v. Thack (In re Taylor)*,
    599 F.3d 880 (9th Cir. 2010) .................................................................................. 34

*Wells Fargo Bank, N.A. v. Genung*,
    (W.D.Wash. 2012) 2012 U.S. Dist. LEXIS 197365 .............................................. 20

*Whatley v. Chatha (In re Chatha)*,
    2019 Bankr. LEXIS 3212, *40-41 (Bankr. ED Cal. 2019) .................................... 25

*Wolkowitz v. Beverly (In re Beverly)*,
    374 B.R. 221 (9th Cir. 2007) ........................................................................... 17, 27

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Yaesu Elecs. Corp. v. Tamura*,
    28 Cal. App. 4th 8, 33 Cal. Rptr. 2d 283 (Cal. App. 2d Dist. 1994) .................................. 13

*Yee v. Panrox Internat. (USA), Inc.*,
    97 Cal. App. 5th 470 (2nd Dist. 2023) ................................................................ 15

*Yellowstone v. Roofian*,
    2021 Cal. Super. LEXIS 43390, *11 ................................................................ 23

*Yoo v. Garoian (In re Garoian)*,
    2014 Bankr. LEXIS 5254 (Bankr. C.D. Cal. 2014) ........................................... 18

## **STATUTES**

11 U.S.C. § 101(54)(D) ................................................................................... 14

11 U.S.C. § 303(h) ......................................................................................... 25

11 U.S.C. § 541 ............................................................................................. 14

11 U.S.C. § 544(b) ......................................................................................... 14

11 U.S.C. § 547 ............................................................................................. 14

11 U.S.C. § 548 ............................................................................................. 14

11 U.S.C. § 548(c) ................................................................................... 27, 28

Cal Civ Code § 668 ........................................................................................ 29

Cal. Civ. Code § 1710 .................................................................................... 19

Cal. Civ. Code § 1710(3) ............................................................................... 19

Cal. Civ. Code § 3439 .................................................................................... 14

Cal. Civ. Code § 3439.02 ............................................................................... 24

Cal. Civ. Code § 3439.02(b) ........................................................................... 24

Cal. Civ. Code § 3439.02(c) ........................................................................... 25

Cal. Civ. Code § 3439.04(a) ..................................................................... 14, 35

Cal. Civ. Code § 3439.04(a)(1) ....................................................................... 12

Cal. Civ. Code § 3439.04(a)(2) ....................................................................... 33

Cal. Civ. Code § 3439.04(a)(2)(A) .................................................................. 30

Cal. Civ. Code § 3439.04(a)(2)(B) .................................................................. 30

Cal. Civ. Code § 3439.04(b) ........................................................................... 17

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Cal. Civ. Code § 3439.04(b)(10)...........................................................27

Cal. Civ. Code § 3439.07..................................................................35

Cal. Civ. Code § 3439.08(a)..............................................................28

Cal. Civ. Code § 3439.09..................................................................14

Cal. Evid. Code § 1600(a)................................................................15

Cal. Evid. Code § 1603....................................................................15

Fed. R. Civ. P. 56(a).......................................................................11

**OTHER AUTHORITIES**

H.R. Rep. No. 595, 95th Cong. 1st Sess. 375 (1977)................................33

5 *Collier on Bankruptcy*, §542.01 (Richard Levin & Henry J. Sommer eds., 16 ed.) ...................14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# I.

## INTRODUCTION

This action was commenced to recover the real property located at 306 N. Highland Avenue, Los Angeles California (the "Property") or its value, as having been fraudulently transferred to the Debtor's son and daughter-in-law while the Debtor was insolvent. There is no dispute that remains for trial as the facts are uncontroverted.  In or about 2012, the Debtor, a lawyer and accountant, refused to account to clients for millions of dollars he oversaw for the benefit of others.  As a result, in 2020, no less than 27 clients sued the Debtor  in not less than three lawsuits demanding he be removed as trustee, account for missing funds, and pay treble or punitive damages.  Frustrated by the Debtor's pattern and practice of concealing his dealings, these clients sued the Debtor to terminate his ability to access their trusts and recover tens of millions of dollars.  The State of California took note, filing a complaint stripping the Debtor of his accounting license.  While some clients accepted his lies, still others threatened litigation. Starved of cash in 2020, the Debtor defaulted on numerous real property obligations including for the Property.

On February 9, 2021, the day the Debtor was deposed in one of the lawsuits, the Debtor executed a grant deed and transferred the Property to the Defendants (the "Transfer").  The language of the grant deed summed it up: "This is a bona fide gift and the grantor received nothing in return."  The pertinent facts corroborate that the Debtor owned the Property since purchasing it from a third party in 2006.  The Debtor maintained the Property at all relevant times paying the mortgage, taxes and insurance.  Nonetheless, the Debtor transferred the Property to the Defendants, despite the Property having an appraised fair market value of $3,000,000, where it would sit beyond the reach of the Debtor's creditors.  The Defendants participated in the fraud by concealment of the pending litigation.

*First*, the Transfer is a textbook example of an "actual intent" fraudulent transfer (First and Second Claims for Relief).  *See* Part IV.B, *infra*.  The California UVTA[3] serves the valuable

---

[3] California Uniform Voidable Transfer Act or "CUVTA".

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

purpose of protecting creditors from schemes to place assets beyond the reach of creditors and California law outlines "badges of fraud" which stigmatize a transfer as presumptively fraudulent if only two or three "badges of fraud" are established. The uncontroverted facts here establish seven (7) badges of fraud leaving no doubt that the Transfer was an intentionally fraudulent one. Similarly, California law and public policy favors the stability and accuracy of recorded instruments. The California Evidence Code presumes that an instrument properly recorded is accurate and valid on its face.   The Defendants have come forth with no evidence to controvert the Debtor's fraudulent intent in making the Transfer; rather, they have  admitted to participating in the fraud. The Defendants will be unable to rebut the evidentiary presumptions Plaintiff has established such that summary judgment at this time is warranted.

*Second*, the Transfer is avoidable as a constructively fraudulent transfer (Third and Fourth Claims for Relief).  See Part IV.C, *infra*.  The Debtor was insolvent at all relevant times because the Debtor was facing lawsuits which he admits he had no ability to repay while concurrently defaulting on numerous obligations on top of being threatened with foreclosure proceedings. Since the Debtor was not paying his debts timely and was awash in litigation, giving away a $3 million dollar property was in constructive fraud of his known creditors.

To the extent the Defendants assert an affirmative defense to the fraudulent transfer claims under the CUVTA, it is Defendants' burden to prove that they received the Transfer for value and in good faith.  There is no such evidence in the record.  Nor could the Defendants possibly establish this defense under any set of facts because, as a matter of law, the recorded instruments from 2006 to 2021 make clear the Debtor owned the Property and gave it to his son and daughter-in-law as a "bona-fide gift" with "no consideration received."  See Part IV.B.3, *infra*.  Because the Defendants provided no value, the Court need not consider whether there is a genuine issue of material fact as to the Defendants' good faith (or lack thereof).  Even if the Court is inclined to consider this element of the Defendants' defense, the evidence in the record indisputably establishes a lack of good faith due to the Defendants participation in the scheme.

In short, the Plaintiff has met his *prima facie* case to establish a fraudulent conveyance. The Motion seeks the avoidance and immediate turnover of title and possession of the real

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   property to the Debtor's estate before the asset is diminished.

2                                                **II.**

3                                   **PROCEDURAL STATEMENT**

4       **A.      Filing Of The Bankruptcy Case**

5       On February 22, 2023, Leslie Klein, filed a voluntary petition for relief under subchapter V

6   of Chapter 11 of the Bankruptcy Code (the "<u>Debtor</u>"). (Bankr. D.I. 1)

7       **B.      Adversary Proceeding**

8       On July 26, 2023, the Trustee filed the *First Amended Complaint for Avoidance and*

9   *Recovery of Fraudulent Transfers*.[4]  [Adv. D.I. 21]  The sole purpose of the Complaint is to avoid

10  the transfer of the real property situated at 306 N. Highland Avenue, Los Angeles, California and

11  recover the Property for the benefit of the Debtor's estate.

12      On September 1, 2023, the Defendants filed their Answer to the Complaint. [Adv. D.I. 27]

13      Pursuant to the Scheduling Order, fact discovery was completed on September 30, 2024.

14  [Adv. D.I. 39]

15                                               **III.**

16                          **STATEMENT OF UNDISPUTED MATERIAL FACTS**

17      **A.      The Debtor Purchases the Property**

18      On August 25, 2006, the Debtor and his wife Erika Klein acquired the Property. (*JSOF 8*)

19      The Debtor and his wife Erika Klein executed a deed of trust in favor of Washington

20  Mutual Bank ("<u>WAMU</u>") to secure an indebtedness of $1,203,000 (the "<u>Mortgage</u>"). (*JSOF 9*)

21  The Mortgage included a Second Home Rider ("<u>Rider</u>") wherein the Debtor stated his intent that

22  the Debtor will:  "occupy, and shall only use, the property as Borrower's second home and shall

23  keep the property available for Borrower's exclusive use and enjoyment at all times, and shall not

24  subject the property to any timesharing or other shared ownership arrangement."  (*JSOF 9; See*

25  *2006 Note, Rider*)

26

27  _____

28  [4] Citations to "Bankr. D.I. __" refer to docket entries in the lead bankruptcy case, *In re Leslie Klein, Debtor*, No.
    23-bk-10990-SK.  Citations to "Adv. D.I. __" refer to docket entries in the above-captioned adversary proceeding.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

On November 18, 2013, the Debtor recorded with the County of Los Angeles the Affidavit of Surviving Spouse declaring himself the sole owner of the Property, as notarized by Kenneth. (*JSOF 10; See Affidavit*)

From 2006 to 2021, legal title to the Property was held exclusively in the name of the Debtor and his wife (or in the name of the Debtor, as a widower).  (*JSOF 11*)

At all times prior to the Transfer, the Debtor paid the property taxes assessed on the Property by the Los Angeles County Treasurer and Tax Collector.  (*JSOF 12*)

At all times prior to the Transfer, the Debtor paid for the homeowners' insurance with respect to the Property. (*JSOF 14*)

At all times prior to the Transfer, the Debtor made the Mortgage payments to the lender. (*JSOF 13*)

**B.      The Multitude Of Lawsuits Filed Against The Debtor Between 2012 And February 2021**

***Menlo Children and Grandchildren Lawsuit***

On September 10, 1996, the Debtor agreed to serve as the successor trustee of the children of Sam and Vera Menlo, and approximately 40 of the Grandchildren's trusts.  (*ASOF 37*) The Menlos, who were holocaust survivors that emigrated to the United States, played a prominent role in the Jewish community of Los Angeles.  *Id.*

On September 18, 2012, Franklin Menlo filed a petition in BP 136679, on behalf of numerous Menlo trust beneficiaries, against Leslie Klein seeking his removal as trustee, demanding an accounting as required by law and requesting surcharge.  (*ASOF 38*)  Shortly thereafter on March 22, 2013, 24 of the Menlo grandchildren filed separate petitions with the Superior Court seeking identical relief (collectively, the "Menlos").  (*ASOF 39*)

On September 18, 2013, the Debtor filed his first verified accounting.  (*ASOF 40*)  The California Probate Code obligated the Debtor to render an accounting to each trust beneficiary annually. *Id*.  However, from the time of Klein's acceptance of 22 trusteeships in 1996, one in 1997, and one in 2002, until ordered by the Court in 2013, Debtor never once accounted to any of the 24 beneficiaries. *Id.* The Debtor claimed he did not maintain detailed financial records and the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   financial accounting for a majority of the trusts were not opened by the Debtor until 2006, 2008 or

2   2009. (*ASOF 41*)

3       On December 10, 2019, the Superior Court, County of Los Angeles, denied the Debtor's

4   motions to dismiss the petitions and assigned for trial each of the three accounting periods:

5   1996-2013; June 30, 2013-December 31, 2016; and January 1, 2017-September 30, 2018.[5] (*ASOF*

6   *42*)

7       On September 15, 2021, the Superior Court issued an order appointing the Referee Glen

8   Reiser (Ret.) to serve as the referee to conduct successive trials for each of the accounting periods.

9   (*ASOF 43*)  Trial began on December 15, 2021, and proceeded in excess of 20 days. (*ASOF 44*)

10   In an 84 page ruling, the Referee documented, the history, findings of fact and conclusions of law

11   for the 10 year period of the Menlo Litigation holding: "The Referee expressly finds that Klein

12   has, in bad faith, wrongfully taken, concealed and disposed of Menlo Trust Assets in

13   contravention of Probate Code §859. (*ASOF 45*)  "It is undeniable that Klein managed the 24

14   Menlo Trusts principally for his own benefit and enrichment.  Klein embezzled what has been

15   accurately calculated to be $19,225,065 in Trust assets for which he has no response. Klein

16   refused to account for many years until forced to do so by the Court, and even after a decade of

17   litigation, still refuses to account for 156 years of collective trust management." (*ASOF 46*) At

18   trial, the Referee found the Debtor liable on the three accountings in the combined sum of

19   $30,401,823, plus attorney's fees, interest and costs. (*ASOF 110*)

20       Following the Debtor's refusal to produce financial records in the Menlo litigation, he was

21   held in contempt by the Superior Court Judge presiding over the case. (*ASOF 47*)  A *Sentencing*

22   *Order re Contempt of Leslie Klein and Statement of Facts In re Contempt* memorializes the

23   Debtor's concealment of assets and refusal to disclose his financial dealings. (*ASOF 48*)

24       On April 7, 2023, the Menlos filed a proof of claim in the Bankruptcy Case in the amount

25   of $55,421,823, for the three accountings, prejudgment interest, and attorney's fees and costs.

26

27   [5] As noted by the Referee, as of August 29, 2022, the Debtor has not issued an accounting for the trust period from
September 30, 2018 through June 30, 2022, though he continued to serve as the trustee for each of the 24 trusts in

28   question.

(Proof of Claim 13-2)

### *Vendriger Lawsuit (Adv. No. 23-01151-SK)*

Following the passing of their parents, the Debtor acted as the trustee for Adi and Yaacov Vendriger.  (*ASOF 49*)  The Debtor never filed an accounting with the court as Special Administrator and was subsequently sued by the Vendrigers on August 27, 2021, in Superior Court, for the County of Los Angeles. (*ASOF 50*)

The complaint alleges multiple improper acts by the Debtor including misuse of the Law Firm IOLTA Account, commingling, and misappropriation of funds. (Vendriger State Court *Complaint for: (1) Fraud; (2) Breach of Fiduciary Duty; (3) Conversion; (4) Money Had And Received; (5) Unjust Enrichment and (6) Accounting seeking the return of not less than $780,000*). *Id.*

On May 11, 2023, Vendriger filed a *Complaint for Non-Dischargeability Debts and to Deny Discharge* against the Debtor. (Adv. No. 23-01151-SK, D.I. 1)

On April 23, 2024, the Court entered an Order Granting Plaintiff's Motion for Default Judgment (Dkt. No. 84) and on April 24, 2024, entered Judgment for Nondischargeability of Debt in the amount of $1,468,054.76.  (Adv. No.23-01151-SK, D.I. 85)

### *Vago Lawsuit (Adv. No. 23-01150-SK)*

In October 2012, following the death of her brother, Erica Vago inherited $18 million held in a foreign bank account which the Debtor offered to repatriate as her financial and tax advisor. (*ASOF 51*)  Between 2013 and 2017, the Vagos moved millions of dollars to the care of the Debtor.  (*ASOF 52*)

On July 1, 2020, the Vagos sued the Debtor and Kenneth in Los Angeles Superior Court for various torts including Fraud, Breach of Fiduciary Duty, Conversion, etc.  (*ASOF 53*)  The Vagos alleged that in September 2019, they asked for $1 million of their funds which request was denied by the Debtor.  The Vagos demanded all their funds be returned and were advised no funds remained.  (*ASOF 54*)

On February 8, 2021, the Debtor filed a *Demurrer and Motion to Strike* to the Vago Complaint. (*ASOF 55*)  On that same day,  Kenneth filed a joinder to the Demurrer and motion to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    strike attacking the fraud, misrepresentations and conversion causes of action.  (*ASOF 56*)  The

2    Debtor testified he had no intention of ever paying the Vagos "a dime." (*ASOF 57*).

3    　　　On September 15, 2022, the jury returned a verdict in favor of the Vagos against the

4    Debtor for Fraud, False Promises, Concealment and Emotional Distress, including punitive

5    damages.  (*ASOF 58*)  On December 2, 2022, the Hon. Terry Green entered judgment in favor of

6    the Vagos against the Debtor in the amount of $24,334,038.  (*ASOF 58*)

7    　　　On December 16, 2022, the Vagos recorded the Abstract of Judgment against any and all

8    real property in Los Angeles County in the Debtor's name. (*ASOF 60*)

9    　　　***Siegel, as Conservator for Hubert Scott, Lawsuit (Adv. No. 23-01152-SK)***

10   　　　Hubert Scott was a client of the Debtor.  The Debtor prepared an estate plan for Mr. Scott

11   in 2004 or 2005.  (*ASOF 60*)

12   　　　In August 2011, the Debtor received approximately $2,000,000, from Mr. Scott which

13   Klein was to invest and oversee for Mr. Hubert's benefit.  (*ASOF 61*)

14   　　　On March 25, 2016, in response to a demand for an accounting, the Debtor issued an

15   accounting setting forth investments the Debtor made for Mr. Scott from January 1, 2005 to

16   February 29, 2016, which included giving Scott unsecured non-recourse promissory notes. (*ASOF*

17   *62*)  Though the notes contained no such authority therein, the Debtor diverted interest due under

18   the notes to pay premiums on life insurance policies of his choosing.  (*ASOF 63*)

19   　　　On June 17, 2024, the Bankruptcy Court entered a Judgment of Nondischargeability of

20   Debt against the Debtor in the Amount of $2,500,000.00 (Adv. No. 23-01152-SK; Dkt. No 31).

21   　　　***License Suspension by California Board of Accountancy***

22   　　　On June 17, 2019, the Debtor was served with an Accusation alleging the Debtor

23   committed various tortious acts; issued promissory notes in the name of the Debtor or entities in

24   which he owned a substantial interest or controlled; issued investments riddled with conflicts-of -

25   interest; mischaracterized investments to clients, and placed elderly clients in unsecured

26   investments which were illiquid.  (*ASOF 64*)  Many of the investments were merely non-recourse

27   loans utilizing the Debtor's Law Firm and Law Firm IOLTA Account to allow the Debtor to

28   utilize funds as he alone directed. *Id.*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

On May 13, 2020, the California Board of Accountancy, Department of Consumer Affairs, State of California, issued its Decision and Order in which the Debtor stipulated to surrendering his accounting license. (*ASOF  65*)

### *Mermelstein Lawsuit (Adv. No. 23-01153-SK)*

In 2006 and 2007, Robert and Esther Mermelstein transferred monies to the Debtor for investing in various life insurance policies the Debtor managed. (*ASOF 66*)

In 2011, the Debtor transferred to Life Capital Group, LLC ("LCG") all the life insurance policies he controlled, including those policies owned by the Law Firm of Les Klein & Associates as well as those held for the benefit of investors he represented.  (*ASOF 67*)  LCG is owned 50% by Shlomo Rechnitz and 50% by the Debtor.  (*ASOF 68*)  According to the Debtor, investors did not need to approve the transfer of the policies to the third party, LCG, in which the Debtor maintained a 50% interest.  (*ASOF 69*)  In this manner, the Debtor shifted the responsibility to pay all the insurance premiums on policies he maintained to LCG as well as control of those policies. (*ASOF 70*)

On May 12, 2023, Robert and Esther Mermelstein filed a *Complaint for Nondischargeability of Debt and Denial Of Discharge* (the "Mermelstein Complaint").  (*ASOF 71)*  The Mermelsteins allege a basic fact pattern across numerous policies in which the Debtor collected life insurance premiums and thereafter transferred the assets without the knowledge or consent of investors such as the Mermelsteins.  (*Id.* ¶¶19, 23, 27, 31, 34)  These policies are alleged to have resulted in significant recoveries to the Debtor which sums were converted by the Debtor and concealed from the Mermelstein beneficiaries. (*Id.* ¶¶14, 20, 31)

On February 16, 2024, the Court entered an *Order Granting Plaintiff's Motion for Default Judgment* (Adv. No. 23-01153-SK; D.I. No. 57) and on February 16, 2024, entered Judgment for the Plaintiff against the Debtor in the amount of $21,737,734.70.  (*Id.* D.I. 58)

### *Berger Lawsuit (Adv. No. 23-01169-SK)*

David Berger entrusted monies to the Debtor to invest in life insurance policies.  (*ASOF 72*)  In 2009, Mr. Berger invested monies with the Debtor on a death benefit policy insuring the lives of Yvette and Andrew Gardner.  (*ASOF 73*)  Without Berger's consent, the Debtor sold or

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

1    encumbered the policy and misappropriated the policy proceeds.  (Adv. No. 23-01169-SK; D.I. 1).

2         On June 9, 2023, Berger filed a *Complaint for Nondischargeability of Debt and Denial Of*

3    *Discharge* (the "Berger Complaint").  (RJN, Ex. 16, Adv. Complaint). On February 16, 2024, the

4    Bankruptcy Court entered Judgment for Nondischargeability of Debt in the Amount of

5    $12,511,547.87 (Adv. No. 23-01169-SK; D.I. 60) and on February 22, 2024, the Court entered an

6    Amended Order entering Judgment for Nondischargeability of Debt in the Amount of

7    $7,401,369.86.  (*Id.* D.I. 66)

8         **C.      The Debtor Defaults And His Financial Difficulties In 2020/2021**

9         Despite having jettisoned the obligation of making annual premium payments on a

10   multitude of life insurance policies to LCG almost a decade earlier, the Debtor realized no income

11   between 2011 and 2021 from the life insurance policies transferred to LCG.  (*ASOF 74*)

12        In the Summer of 2020, the Debtor missed multiple monthly mortgage payments for the

13   Property.  The defaulted debt owed to the lender on the Property was estimated by Defendants to

14   be "over a $100,000" at the end of 2020.  (*ASOF 75*)

15        In October 2004, the Debtor purchased the real property located at 419 N. Highland, Los

16   Angeles, California ("419 N. Highland") and took out a mortgage loan in his name with WAMU

17   in the amount of $975,000.  (*ASOF 76*)  In December 2004, the Debtor, with Kenneth's assistance,

18   transferred title to 419 N. Highland to Bay Area Development Co. ("BADCO"), a company the

19   Debtor  owned and controlled. (*JSOF 30; ASOF 77*)  On August 27, 2019, and May 5, 2020, the

20   lender recorded Notice of Defaults against the property for missed payments.  (*ASOF 78*)  On

21   August 7, 2020, the Lender issued and recorded a Notice of Sale against the property.  (*ASOF 79*)

22        In November 2004, the Debtor purchased the real property located at 507 Mansfield Ave,

23   Los Angeles, California ("507 Mansfield") and took out a mortgage loan in his name in the

24   amount of $437,500, with WAMU.  (*ASOF 80*)  In December 2004, the Debtor transferred title for

25   507 Mansfield to BADCO.  (*ASOF 81*)  In July 2018, BADCO took out a construction loan and

26   second deed of trust in the amount of $577,000, with World Wide Lenders Inc.  (*ASOF 82*)  On

27   October 8, 2019, the World Wide Lenders recorded a Notice of Default against the real property

28   and on January 14, 2020, a Notice of Sale was recorded against the property.  (*ASOF 83*)  The

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Notice of sale was rescinded in February 2020, but in June and July 2020, the lender recorded two

2   additional Notices of Default against the property and an intent to sell the property on November

3   6, 2020.  (*ASOF 84*)

4         On September 22, 1998, BADCO acquired the real property located at 161 Poinsettia

5   Place, Los Angeles, California ("Poinsettia Place").  (*JSOF 31*)  On June 8, 2016, BADCO took

6   out an adjustable rate mortgage in the amount of $1,097,000, against the property.  (*JSOF 34*)  On

7   July 30, 2018, BADCO quitclaimed Poinsettia Place to the Debtor. *(JSOF 35)* On February 18,

8   2021, the mortgage lender recorded a Notice of Default and Election to Sell Under Deed of Trust

9   to the Debtor for Poinsettia Place identifying an outstanding balance of $121,189.54, as of

10  February 11, 2021.  (*ASOF 85*)

11      **D.**    **The February 12, 2021, Transfer Recorded As A Bona Fide Gift For No**
**Consideration Received**

12

13        In the Summer of 2020, Defendants, who are husband and wide, were residing in and

14  renting the Property.  (*JSOF 2, 17*)  *Uniform Loan Application*, *p. 1.*  On July 1, 2020, Kenneth

15  was named as a defendant in the Vago litigation.  (*JSOF 15*)  Defendants received a number of

16  default notices on the Property. (*JSOF 16)*  Even though Kenneth advised his father about the

17  defaults, he continued to receive them.  (*ASOF 87*)  Worried the Property would be foreclosed on,

18  Kenneth decided to "take it over".  (*ASOF 89*)  Kenneth approached the Debtor to "purchase" the

19  Property.  (*ASOF 89*)

20        Kenneth did not discuss a purchase price for the Property with the Debtor.  (*ASOF 90*)

21  The "purchase price" was whatever Kenneth needed "to facilitate the transfer of the property".

22  (*ASOF 91*)  Defendant investigated the amount to pay off the Debtor's mortgage and also started

23  the process to get his own mortgage loan to replace it.  (*ASOF 92*)

24        On November 4, 2020, Kenneth executed a Uniform Residential Loan Application to

25  submit to banks wherein he declared under Title 18 of the United States Code, Sec 1001, *et seq.*,

26  that (a) he had no ownership interest in any property in the last three years, (b) he was not a named

27  party to a lawsuit in the last 3 years, and (c) he rented the 306 N. Highland Property for the past 13

28  years.  (*JSOF 17*)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

On December 14, 2020, Encore Escrow issued escrow instructions for the issuance of a new loan to be secured by the Property in the name of the Defendants in the amount of $822,000, and to close no later than March 2, 2021. (*JSOF 18, 23*)  As part of the Defendants' loan, the lender obtained a third-party appraisal that valued the Property at $3,000,000. (*ASOF 95*)

On February 9, 2021, the same day as he was deposed in the Siegel litigation, the Debtor executed a Grant Deed wherein the Debtor transferred the Property to the Defendants as "a bona fide gift", and as memorialized, "the grantor received nothing in return."  (*ASOF 93; JSOF 21*)

On February 10, 2021, Encore Escrow forwarded to Kenneth a Preliminary Change of Ownership form in connection with recording the Deed of Trust wherein Kenneth declared the Transfer to be "a gift."  (*ASOF 94*)

On February 12, 2021, the Grant Deed was recorded with the County of Los Angeles. (*JSOF 21*)

On March 3, 2021, the Encore Escrow issued a Final Settlement Statement which memorialized the payoff of the Mortgage in the name of the Debtor in the amount of $901,942.40, as replaced by a new first deed of trust and mortgage encumbering the Property in the amount of $822,000.  (*ASOF 96*)

## IV.

## ARGUMENT

### A.    Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party.  *Id.*

The movant "bears the initial responsibility of informing the . . . court of the basis for its motion" and identifying what "it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party carries

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    this burden, the "party opposing a properly supported motion for summary judgment may not rest

2    upon mere allegation or denials of his pleading, but must set forth specific facts showing that there

3    is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256.  "Where the record taken as a whole

4    could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

5    trial,'" and summary judgment is properly granted.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

6    *Radio Corp.*, 475 U.S. 574, 587 (1986).

7           Summary judgment is "'not a disfavored procedural shortcut,' but [rather is] the 'principal

8    tool by which factually insufficient claims or defenses can be isolated and prevented from going to

9    trial with the attendant unwarranted consumption of public and private resources.'"  *U.S. ex rel.*

10   *Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995) (brackets omitted) (quoting

11   *Celotex*, 477 U.S. at 323–24, 327).  "The very mission of the summary judgment procedure is to

12   pierce the pleadings and to assess the proof in order to see whether there is a genuine issue of

13   fact."  *Mende v. Dun & Bradstreet, Inc.*, 670 F.2d 129, 132 (9th Cir. 1982) (citation and internal

14   quotations omitted).

**B.    The First Claim for Relief:  The Transfer Was Made With Actual Intent To Defraud Creditors Pursuant To California Civil Code § 3439.04(a)(1)**

**(1)    The CUVTA Serves the Valuable Purpose of Protecting Creditors From Schemes to Place Assets Beyond Their Reach and is to Be Liberally Interpreted**

California Civil Code section 3439.04(a)(1) provides that creditors may avoid what are

often called "actual" fraudulent transfers:

> (a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

Cal. Civil Code section 3439.04(a)(1).

The "actual intent" inquiry is the same under section 548(a)(1)(A) of the Bankruptcy Code

and California Civil Code § 3439.04(a)(1).  *See In re Cohen*, 199 B.R. 709, 716 (B.A.P. 9th Cir.

1996) ("Whether [the debtor's] purchases were actually fraudulent as having been made with

1    actual intent either to hinder or to delay or to defraud creditors is the same under the Bankruptcy

2    Code and UFTA.").  "Whether a conveyance is fraudulent under Section 548(a)(1)(A) is thus

3    determined by reference to the intent of the debtor-transferor in making the transfer; 'the state of

4    mind of the transferee is irrelevant.'"  *In re Bernard L. Madoff Inv. Sec. LLC*, 2011 U.S. Dist.

5    LEXIS 97647, at *12 (S.D.N.Y. Aug. 31, 2011) (quoting *In re Bayou Grp., LLC*, 439 B.R. 284,

6    304 (S.D.N.Y. 2010)); *see also In re Garoian*, 2014 Bankr. LEXIS 5254, at *70 (Bankr. C.D. Cal.

7    Oct. 7, 2014) ("In a fraudulent transfer inquiry based on actual intent, the court should focus on

8    the state of mind of the transferor.").  "The focus in the inquiry into actual intent is on the state of

9    mind of the debtor."  *In re Cohen*, 199 B.R. at 716–17.

10    In general, a voidable transaction is "a transfer by the debtor of property to a third person

11    undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim."

12    *Kirkeby v. Super. Ct. of Orange County*, 33 Cal. 4th 642, 15 Cal. Rptr. 3d 805, 93 P.3d 395, 399

13    (Cal. 2004) (quoting *Yaesu Elecs. Corp. v. Tamura*, 28 Cal. App. 4th 8, 33 Cal. Rptr. 2d 283, 286

14    (Cal. App. 2d Dist. 1994))  The CUVTA serves the valuable purpose of protecting creditors from

15    schemes to place assets beyond their reach.  *Chen v. Berenjian*, 33 Cal. App. 5th 811, 822, citing

16    to (*Lo v. Lee, supra*, 24 Cal.App.5th at p. 1071.)  Courts are to liberally construe California's

17    Uniform Voidable Transactions Act ("CUVTA"), California Civil Code § 3439.01, *et seq.*, "with a

18    view to effecting their purpose."[6]  *Tatung Co. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, citing to

19    *Borgfeldt v. Curry*, 25 Cal. App. 624, 144 P. 976, 977 (Cal. App. 1st Dist. 1914). Their purpose

20    "undoubtedly is to prevent debtors from placing property which legitimately should be available

21    for the satisfaction of demands of creditors beyond [creditors'] reach." *Id.*

22    In the Ninth Circuit, proof of fraud actual or constructive fraud is governed by the

23    preponderance of the evidence standard of proof.  *Gill v. Stern (In re Stern)*, 345 F.3d 1036,

24    1043(9th Cir. 2003); *Salven v. Mendez (In re Mendez)*, 2008 Bankr. LEXIS 653, *27 (Bankr ED

25    CA 2008).

26

27    [6] In California, the CUVTA supersedes the Uniform Fraudulent Transfer Act (UFTA).  The CUVTA applies to
transfers made or obligations incurred after January 1, 2016.  However, the case law under the UFTA has been

28    consistently applied to the CUVTA.  See *Aghaian v. Minassian*, 59 Cal. App. 5th 447, 455 n.8 (2020).

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

**(2)** **Defendants Received The Transfer From The Debtor On The Date The Deed Was Recorded:  February 12, 2021**

Federal law determines which assets constitute the bankrupt's estate. "[11 U.S.C.] § 541 delineates the scope of 'property of the estate.'" (*Begier v. I.R.S.* (1990) 496 U.S. 53, 59.)  Section 544(b) of the Bankruptcy Code permits a bankruptcy trustee to avoid any transfer of a debtor's property that would be avoidable by an unsecured creditor under applicable state law with an allowable claim.[7]  *Durkin v. Shields (In re Imperial Corp. of Am.),* 1997 U.S. Dist. LEXIS 20942 (S.D.N.Y. 1997).  Subsections (a) and (b) of Code Section 544, sometimes referred to as the Trustee's "strong arm powers", perform very different functions but with the same goals: maximizing the estate and equalizing the distribution of a debtor's assets among creditors of the same class.  5 *Collier on Bankruptcy*, §542.01 (Richard Levin & Henry J. Sommer eds., 16 ed.)  The § 544(b) requirement of a transfer of "an interest of the debtor in property," which is a phrase common to §§ 544(b), 547, and 548, refers to property that would have been part of the estate had it not been transferred before bankruptcy. *See Begier v. I.R.S.*, 496 U.S. 53, 58, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990); *Keller v. Keller (In re Keller)*, 185 B.R. 796, 799 (9th Cir. B.A.P. 1995).

A "transfer" under the Bankruptcy Code is defined as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with – (i) property; or (ii) an interest in property."  11 U.S.C. § 101(54)(D).  California's definition of a "transfer" is nearly the same.  *See* Cal. Civ. Code § 3439.01(m) (providing that a "transfer" is "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money").

Here, the applicable state law is the <u>CUVTA</u>, Cal. Civ. Code §§ 3439–3439.14.  The actual intent fraudulent transfer provision of the CUVTA is substantively identical to its Bankruptcy Code analog.  *See* Cal. Civ. Code § 3439.04(a) (allowing a transfer to be avoided when the debtor acted with "actual intent to hinder, delay, or defraud" any creditor).  The CUVTA, however, provides for a four-year lookback period.  *See* Cal. Civ. Code § 3439.09.  Accordingly, the First

---

[7] It is a stipulated fact that a predicate creditor exists in the present case. (*JSOF*  3)

1   Claim for Relief seeks avoidance of the Transfer under the CUVTA as it was made 2 years and ten

2   days prior to the Petition Date.

3       The recordation date is the applicable date of a transfer of real property under California

4   and federal law. *See Ehring v. W. Cmty. Moneycenter (In re Ehring)*, 91 B.R. 897, 900 (9th Cir.

5   B.A.P. 1988), aff'd, 900 F.2d 184 (9th Cir. 1990) ("the transfer of the real property interest

6   occurred when [the transferee] perfected its interest under state law. . . . In California, perfection

7   of a deed of trust occurs upon the recordation of the document with the county recorder.")

8       Here, the uncontroverted facts are the Debtor signed the grant deed on February 9, 2021,

9   and it was recorded on February 12, 2021. (*JSOF 21*)

10      **(3)    The Transfer Was Made With Actual Intent To Hinder, Delay And Defraud**

11

12      **a.    According to California Law, a Grant Deed Is *Prima Facie* Evidence of the Accuracy of the Content of a Recorded Instrument and the Listed Owner is Presumed to Hold Full Beneficial Title**

13

14      The record of an instrument or other document purporting to establish or affect an interest

15  in property is *prima facie* evidence of the content of the original recorded document "and its

16  execution and delivery by each person by whom it purports to have been executed." Cal. Evid.

17  Code § 1600(a); *see Thomas v. Peterson,* (1931) 213 C. 672, 674, 3 P.2d. 306)  Cal. Evid. Code

18  § 1603 establishes a *prima facie* rebuttable presumption that the Debtor, named in a recorded

19  deed, was the beneficial owner of the real property. *Yee v. Panrox Internat. (USA), Inc*., 97 Cal.

20  App. 5th 470, 479 (2nd Dist. 2023) *Carloss v. County of Alameda*, (1st Dist. 2015) 242 Cal. App.

21  4th 116.  Similarly, title is generally understood to denote ownership or "the legal right to control

22  and dispose of property" (Black's Law Dict. (8th ed. 2004) p. 1522, col. 2).  Under California's

23  "form of title" presumption, the description in a deed as to how title is held presumptively reflects

24  the actual ownership status of the property. *In re Marriage of Fossum* (2011) 192 Cal.App.4th

25  336, 344, 121 Cal. Rptr. 3d 195. This common law presumption is codified in  Cal. Evid. Code §

26  662, which states;

27          "The owner of the legal title to property is presumed to be the owner
            of the full beneficial title."

28

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

1    This presumption may be rebutted *only by clear and convincing proof*. The presumption is

2    based on the promotion of a public policy that favors the stability of titles to property[8]. *Id.* at 345,

3    citing to (*Brooks*, at p. 185.) Similarly, a "person who exercises acts of ownership over property is

4    presumed to be the owner. Cal. Evid. Code § 638.

5    As set forth in the uncontroverted facts, the *306 N. Highland Mortgage* dated 2006, *Trust*

6    *Deed* dated 2006, the *Affidavit of Surviving Spouse* dated 2013, and the *Grant Deed* are clear,

7    unambiguous documents which identify the Debtor as the owner of the 306 N. Highland property.

8    Under California law, the Trustee is entitled to rely on the numerous evidentiary presumptions

9    from the recorded instruments which are entirely consistent with one another. Despite post-

10    petition protestations to the contrary, California law recognizes that recording an instrument is

11    *prima facie* evidence of the validity of such facts. Similarly, the undisputed facts are clear that at

12    all relevant times the Debtor paid (a) the real property taxes, (b) the mortgage, and (c) the hazard

13    insurance associated with the Property, entirely consistent with acts of ownership over property.

14    Cal. Evid. Code § 638. (*JSOF 12-14*) Since Defendants' alternative explanation(s) will be

15    insufficient as a matter of law to rebut the various presumptions under California law, the Transfer

16    is properly scrutinized under the CUVTA which is to be liberally applied to protect creditors from

17    schemes to divert assets.

**b.    The Undisputed "Badges of Fraud" Establish Actual Intent to Defraud**

18

19

20    In cases of fraudulent transactions, where the real intent of the parties is solely within their

own knowledge, direct proof of a transfer and of a fraudulent intent is often an impossibility.

21    Hence, proof indicative of a transfer and of fraud may come by inference from circumstances

22    surrounding the transaction, the relationship and interest of the parties." *In re Walldesign, Inc*.

23    2017 U.S. Dist. LEXIS 50947, *6 (C.D. 2017), citing to *Menick v. Goldy*, 131 Cal. App. 2d 542,

24

25

26

[8] Allegations … that legal title does not represent beneficial ownership have … been historically disfavored because

27    society and the courts have a reluctance to tamper with duly executed instruments and documents of legal title.' *In re Marriage of Brooks & Robinson* (2008) 169 Cal. App. 4th 176,185. *See also Gotlieb v. Rose(In re Khalil)*, 2015

28    Bankr. LEXIS 1976, *27 (Bankr. C.D. Cal. 2017).

LA:4894-4459-3364.15 78512.001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

548, 280 P.2d 844 (1955).[9]  All of the relevant circumstances surrounding the transfer are properly

considered.  *Filip v. Bucurenciu*, 129 Cal.App.4th 825, 834, 28 Cal. Rptr. 3d 884 (2005).

When determining the debtor's actual intent, courts consider certain "badges of fraud,"

defined by statute as follows: (1) Whether the transfer or obligation was to an insider; (2) Whether

the debtor retained possession or control of the property transferred after the transfer; (3) Whether

the transfer or obligation was disclosed or concealed; (4) Whether before the transfer was made or

obligation was incurred, the debtor had been sued or threatened with suit; (5) Whether the transfer

was of substantially all the debtor's assets; (6) Whether the debtor absconded; (7) Whether the

debtor removed or concealed assets; (8) Whether the value of the consideration received by the

debtor was reasonably equivalent to the value of the asset transferred or the amount of the

obligation incurred; (9) Whether the debtor was insolvent or became insolvent shortly after the

transfer was made or the obligation was incurred; (10) Whether the transfer occurred shortly

before or shortly after a substantial debt was incurred; (11) Whether the debtor transferred the

essential assets of the business to a lienor that transferred the assets to an insider of the debtor."

Cal. Civ. Code § 3439.04(b)

"There is no minimum number of factors that must be present before the scales tip in favor

of finding of actual intent to defraud." *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 834, 28 Cal.

Rptr. 3d 884 (3rd Dist. 2005).  The presence of a single badge of fraud may spur mere suspicion;

the confluence of several can constitute conclusive evidence of actual intent to defraud, absent

"significantly clear" evidence of a legitimate supervening purpose. *Acequia, Inc. v. Clinton (In re*

*Acequia, Inc.*), 34 F.3d 800, 806 (9th Cir. BAP 1994) (Once a trustee establishes a confluence of

several badges of fraud, the trustee is entitled to a presumption of fraudulent intent.)[10] *See United*

---

[9] Any of the three — intent to hinder, intent to delay, or intent to defraud — qualifies a transfer for UFTA avoidance, even if adequate consideration is paid by someone other than a good faith transferee for reasonably equivalent value. *Cohen*, 199 B.R. at 716-17 (California UFTA); *Wolkowitz v. Beverly (In re Beverly)*, 374 B.R. 221 (9th Cir. B.A.P. 2007).

[10] *See Mendez v. Keeling*, No. CV 09-2261-BEN-WMC, 2011 U.S. Dist. LEXIS 39952, 2011 WL 1431469, *6-7 (S.D. Cal. Apr. 13, 2011) (granting summary judgment where plaintiff adduced evidence as to the first, second, fourth, eighth, and tenth factors, shifting the burden to defendants, and defendants did not proffer evidence showing that triable issues of fact remained). Here, the Court concludes that Plaintiff sufficiently shifted the burden to Defendants to produce evidence rebutting any of the five factors stated above.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    *States v. Boyce,* 742 F.3d 792, 134 S.Ct. 2321 (2014) (on summary judgment satisfaction of 4

2    badges of fraud court sufficient that the transfer was presumptively fraudulent; the burden thus

3    shifts to defendants to defend the transfer). (*See In re Walldesign, Inc.*, 2017 U.S. Dist. LEXIS

4    50947, *8 (C.D. Cal. 2017), upholding Bankruptcy court's grant of summary judgment on appeal

5    where two badges of fraud were proven). *See Filip v. Bucurencui*, 129 Cal. App. 4th 825, 834

6    (2005) (concluding "[a] finding of actual intent was virtually compelled" despite argument that

7    "only two factors are present").  Here, the undisputed facts establish seven (7) badges

8    documenting the fraudulent nature of the Transfer.

9                    ***Whether the Transfer or Obligation Was to an Insider***

10              The Ninth Circuit has recognized that "a special relationship between the debtor and the

11   transferee" is one of the "more common circumstantial indicia of fraudulent intent." *Kelleher v.*

12   *Kelleher*, 2014 U.S. Dist. LEXIS 36330, 13-14(N.D. Cal. 2014), citing to *In re Acequia, Inc.*, 34

13   F.3d 800, 806 (9th Cir. 1994) (italics omitted) (quoting *Max Sugarman Funeral Home, Inc. v.*

14   *A.D.B. Investors*, 926 F.2d 1248, 1254 (1st Cir. 1991)). This can include a "family, friendship, or

15   close associate relationship." *Yoo v. Garoian (In re Garoian)*, 2014 Bankr. LEXIS 5254, *73

16   (Bankr. C.D. Cal. 2014).  Fraudulent transfer cases recognize that transfers to family members

17   must be given strict scrutiny.  *Decker v. Voisenat (In re Serrato),* 214 B.R. 219, 229 (Bankr. N.D.

18   Cal. 1997)(transfer from mother to son). "In such cases, "the parties are held  to a fuller and

19   stricter proof of the consideration, and of the fairness of the transaction." Id at 230. Here, the facts

20   are not in dispute that the Transfer was between father and son, lawyers who practiced together

21   upwards of 15 years. (*JSOF 4, 5, 6, 7*)  The first badge is satisfied.

22                  ***Whether the Transfer or Obligation Was Disclosed or Concealed***

23              The Grant Deed on its face memorializes a gift for no consideration executed under the

24   penalty of perjury by the Debtor.  (*JSOF 21*)  The Debtor, a seasoned lawyer and professional,

25   clearly knew the significance of a grant deed.  The discussion regarding the accuracy of the grant

26   deed should end there.  However, at deposition, the Debtor and Defendant testified as to a new

27   version of events where recorded instruments are false, concealed transactions flourish, and

28   licensed attorneys claim ignorance of basic real property tenets.  The intent to mislead and/or

1  suppress the true state of events is a "concealment" under California law.  Pursuant to Cal. Civ.

2  Code § 1710(3):

3       "The suppression of a fact, by one who is bound to disclose it, or
        who gives information of other facts which are likely to mislead

4       for want of communication of that fact;

5       Cal. Civ. Code § 1710 sets forth four separate theories of deceit of which subsection (3)

6  sets forth a cause of action for concealment. *In re Ronduen*, 2023 U.S. Dist. LEXIS 116337, *28

7  (C.D. Cal. July 6, 2023) [11]  Courts have deemed a transfer to be concealed for purposes of a

8  fraudulent transfer analysis where the formal documentation did not reflect the actual

9  circumstances surrounding the transfer.  *S. New Eng. Tel. Co. v. Sahara & Arden, Inc.*, 2010 U.S.

10 Dist. LEXIS 51178, *19(Dist. Nev. May 24, 2010)  Here, the Debtor's intent to conceal or mislead

11 with respect to the Transfer is remarkable:

12      Q.   "Exhibit 33 says that the grant deed is a bona fide gift and the grantor
            received nothing in return,  Is that an accurate statement?

13

14      A.   No. There's no gift here at all.  I didn't give him a gift at all nothing.

15      Q.   Well, I thought you testified initially that Exhibit 33 was completely true?

16      A.   Well, there was a gift back in 1998.  I mean, I gave them $600,000.  And
            there was a gift on 2006 where I made a gift of, I think, another $500,000. So

17          1.1 million was a gift.  And then if I made the mortgage payments in 2007, '8,
            '9, '10, '11, '12, '13, '14, '15, '16, '17, those are gifts.  But there was no gifts

18          in 2021."

19

20      (Depo. of Debtor, June 8, 2024, p. 131, lns. 6-20, attached to Decl. of J. Nolan
        as Ex. B)

21

22      The February 9, 2021 grant deed, a public document prepared by the Debtor, is false and

23 the concealed transactions between father and son are true.[12] The Debtor is hoisted by his own

24 petard. The third badge is established.

25 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26 [11] Concealment is defined in the California Ins. Code, § 330, as neglect to communicate that which a party knows, and ought to communicate. *See Nieto v. Blue Shield of California Life & Health Ins. Co.,* (2nd Dist. 2010) 181 Cal. App. 4th 60,76.

27

28 [12] California Civil Code, § 1711:  "one who practices a deceit with intent to defraud the public, or particular class of persons, is deemed to have intended to defraud every individual in that class…".

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

***Whether Before the Transfer was Made or Obligation Was Incurred,
the Debtor had Been Sued or Threatened With Suit***

When a transaction occurs at a time when the debtor was the subject of a "slew of lawsuits", a transfer cannot in any sense of the word be characterized as an "arms-length" transaction. *See Sharp v. Roscoe's Intellectual Props. LLC (In re East Coast Foods, Inc.)*, 2017 Bankr. LEXIS 2410, *23(Bankr. C.D. CA 2017) (the debtor's principal negotiated the subject transfer on behalf of both the transferor and the transferee when lawsuits were pending). *See Wells Fargo Bank, N.A. v. Genung,* (W.D.Wash. 2012) 2012 U.S. Dist. LEXIS 197365, *26 (Even though not directly threatened with a lawsuit, the threat of litigation was inherently present given his default on the loan and this badge of fraud established.) *See Gahn v. United States*, 1996 U.S. Dist. LEXIS 9069, *13( W.D. Wash. 1996) (it is undisputed that the Williamsons and defendant agreed to the conveyance with knowledge of the pending King County lawsuit). Where parties act in concert to transfer property while immersed in litigation, courts are persuaded a fraud has been committed. In *Wells Fargo Bank, N.A. v. Genung, supra*, the court was impressed with the fact the defendant executed a quitclaim deed <u>the day before</u> the scheduled nonjudicial foreclosure sale as indicative of an intent to defraud. *Id*. at 26.

Here, the Debtor signed the grant deed on the <u>same day</u> his deposition was taken in the Siegel litigation.  (*ASOF 93*) The Debtor was under siege by three lawsuits (Menlo, Vago, and Siegel) for tens of millions of dollars, one California State Board Complaint, and under threat of suit by three other groups of litigants (Mermelstein, Vendriger, and Berger).  On July 1, 2020, the Debtor was sued by the Vagos for numerous intentional torts which accused him of stealing tens of millions of dollars. (*ASOF 53*)  Kenneth  was aware of the lawsuit as he was a named party. Seventeen months after the Transfer, the Vagos received a jury verdict in excess of $24,000,000. (*ASOF 58*)  The Menlos also prevailed in 2022, wherein the Debtor was held liable in excess of $30,000,000. *(ASOF110)*  As noted in *In re East Coast Foods, Inc., supra*, the onslaught of litigation at the time of the transfer is a compelling factor to indicate the Transfer was not an arm's-length conveyance, but in frustration of creditors' rights. *See Ezra v. Secor (In re Ezra)*, 537 B.R. 924, 931 (9th Cir. B.A.P. 2015) (the threat of litigation arising from specific claims had

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   significantly increased, which only served to reinforce the bankruptcy court's determination that

2   the debtors executed the deed of trust for the purpose of keeping any equity in their residence as

3   far away from their creditors as possible.).  The Fourth badge is met.

4                          ***Whether the Debtor Removed or Concealed Assets***

5          The extensive and often circuitous movement of funds among several entities controlled by

6   a debtor to his personal benefit coupled with the fact that records of such transactions are in

7   general disarray establish a badge of fraud to hinder, delay and defraud creditors.  *See Acequia,*

8   *Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 806 (9th Cir. 1994) citing to *Nordberg v.*

9   *Republic Nat'l Bank (In re Chase & Sanborn Corp.)*, 51 Bankr. 739, 740-41 (Bankr. S.D. Fla.

10  1985).  *In re Ezra v. Seror (In re Ezra)*, 537 B.R. 924 (9th Cir. B.A.P. 2015), the bankruptcy court

11  noted that the debtors were engaged in a pattern and practice of shielding their assets from

12  creditors evidencing concealment and an intent to defraud. The court inferred from the entirety of

13  the debtors' conduct, the debtor engaged in a pattern and practice of obfuscating his dealings.  *Id*.

14  at 931.  Similarly, in looking at the entirety of the debtor's conduct, courts take judicial notice of

15  prior courts findings.  *See United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1192 (9th

16  Cir. BAP 2004) (court citing transcript of debtor's sentencing hearing, during which court found

17  expressly that the transfer was an effort on debtor's part to conceal assets and remove them from

18  the reach of the government).

19         Over 25 legal entities are associated with the Debtor between 2015 and 2021. (*ASOF 98*)

20  The Debtor wired monies in and out of numerous companies he controlled to the Debtor's solely

21  controlled entity, Les Klein & Associates, whereupon the monies were diverted for the Debtor's

22  sole benefit. (*ASOF 99*)  The Trustee propounded in excess of thirty (30) 2004 motions after the

23  Debtor informed him that the Debtor does not maintain financial records.[13]  At his 2004

24  examination, the Debtor was questioned regarding 27 legal entities associated with his name and

25  he admitted roles in incorporating and operating BADCO, BK Life Settlements, and Doctor

---

[13] *See D. I. Nos. 206, 207, 208, 225, 233, 258, 260, 263, 265, 301, 349, 351, 360, 362, 364, 368, 384, 438, 468, 478, 493, 511, 520, 522, 540, 542, 564, 566, 572, 605, 675, 708, 737, and 782.*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Marketing Group, LLC, but denied almost all others. He denied knowledge of the Patient Referral

2   Network, yet he maintained an account with Bank of America for the Patient Referral Network

3   that directed statements to his house.  (*ASOF 100, 101*)  Litigation Financing was "never set up"

4   according to the Debtor's testimony, yet it withdrew monies on accounts where statements are

5   delivered to the address of Les Klein & Associates, Inc. (*ASOF 100,102*)  In the Menlo litigation,

6   the Referee noted the same lack of transparency.  The Debtor ran literally thousands of

7   transactions through the Law Firm account commingled with other clients funds as "one big pot".

8   (*ASOF 37, fn. 21*)  The Debtor maintained "no trust files of his own and had no legitimate

9   recordkeeping system."  (*Id*. p. 23, lns. 15-16)

10       The Court can also look to the detailed findings of the Superior Court to establish the

11   Debtor's removal and concealment of assets.  The Superior Court issued a temporary restraining

12   order requiring the Debtor to disclose financial  records in the Menlo litigation.  (*ASOF 47*) The

13   Debtor refused to do so.  An evidentiary hearing was held in Dept. 3 of the Los Angeles Superior

14   Court, Judge Luna presiding, at which time the Debtor's failure to comply was found to have been

15   willful.  (*ASOF 48*)  Judge Luna found "Klein willfully and contemptuously failed to comply with

16   the court's order to disclose information including details and extent of his personal assets as set

17   forth in the November 17, 2022, order."  (*ASOF 48*, §9(d)) The Debtor has an established pattern

18   of concealment of his assets, affairs and dealings. The seventh badge of fraud is satisfied.

19   ***Whether the Value of the Consideration Received by the Debtor***
     ***Was Reasonably Equivalent to the Value of the Asset Transferred***
20   ***or the Amount of the Obligation Incurred***

21       An examination into reasonably equivalent value is comprised of three inquiries: (1)

22   whether value was given; (2) if value was given, whether it was given in exchange for the transfer;

23   and (3) whether what was transferred was reasonably equivalent to what was received. *Hasse v.*

24   *Rainsdon (In re Pringle)*, 495 B.R. 447, 463 (9th Cir. BAP 2013) "Reasonably equivalent value"

25   is a key concept in fraudulent transfer law. The underlying goal is to preserve estate assets, and

26   courts assess reasonably equivalent value from the creditors' perspective. *Id.*  This examination

27   requires the court to consider all of the circumstances surrounding the transfer, *Id.*, but "the focus

28   is whether the net effect of the transaction has depleted the bankruptcy estate." *Harman v. First*

1    *Am. Bank of Maryland (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479, 485 (4th Cir.

2    1992).

3        In the context of a fraudulent conveyance action, grant deeds memorializing a transfer as a

4    "gift" or for "no consideration", are persuasive evidence no consideration was given.  *See*

5    *Yellowstone v. Roofian*, 2021 Cal. Super. LEXIS 43390, *11 (grant deed to insider recorded as a

6    gift); S*ee also, Ash v. Moldo*, 2006 Bankr. LEXIS 4855 (9th Cir. BAP 2006) (quitclaim deed

7    memorializing no consideration given for the transfer).  Here the uncontroverted facts establish a

8    recorded Grant Deed which on its face memorialized a "bona fide gift".  (*JSOF 22*)  Defendant

9    and the Debtor labelled the Transfer as, "grantor receiving nothing in exchange".  *See Ritchie*

10   *Capital Mgmt., LLC v. Stoebner, 779 F.3d 857,* 863 (8th Cir. 2015). ("The fact that valuable

11   property has been gratuitously transferred raises a presumption that such transfer was

12   accompanied by actual fraudulent intent.")  The Debtor and the Defendant admit no monies were

13   paid to the Debtor on February 12, 2021, as part of the Transfer.  *(ASOF 104)*

14       Faced with the fact that the relevant documents memorialize that no consideration was

15   provided to the Debtor, the Defendants will claim that such consideration took the form of a

16   different parcel of real property transferred to the Debtor *fifteen years* earlier.  No documents were

17   produced by Defendants during discovery to evidence the Defendants owned any real property in

18   2006, or conveyed any property to the Debtor in 2007, or that the Debtor received any value in

19   exchange for the transfer. (*ASOF 103*)  Indeed, even if such documents existed, and were properly

20   recorded or exchanged, value given must be contemporaneous with the suspect transfer.  *See*

21   *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp*.), 263 B.R. 406, 467 (S.D.N.Y. 2001)

22   (The requirement that the debtor must have "received" the value in question expresses a temporal

23   condition demanding an element of contemporaneity in the determination of whether something

24   close to the reasonable equivalence has been exchanged.)  *See also Salven v. Mendez (In re*

25   *Mendez)*, 2008 Bankr. LEXIS 653, *29 (Bankr. E.D.C.A, 2008) (transfer from the debtor to the

26   defendant of one-half interest in a Residence was for less than reasonably equivalent value

27   because the interest was worth $150,000.00, and defendant did not pay anything at the time of the

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    transfer.)[14]  Since the Defendants' alternative theory will be undocumented, non-specific, and not

2    be based on value exchanged in 2021, the rebuttal is a house of cards.

3          The Defendants will also claim they rendered "reasonable value" to the Debtor as they paid

4    off the Mortgage of $902,000.  This argument is disingenuous.  At the time of the issuance and

5    recordation of the Grant Deed on February 12, 2021, it is an uncontroverted fact that no monies or

6    value were exchanged.  (*ASOF 104*)  It is undisputed that the Defendants needed to clear the

7    Mortgage from the title of the Property in 2021 so they could transfer title into their name.  Two

8    weeks later, they closed escrow and the encumbrance owed to WAMU was paid off and replaced

9    with a new mortgage of almost like amount ─ $822,000 owed to Guaranteed Rate, Inc.  *(JSOF 18,*

10   *23, 24)*  The Property, appraised for $3,000,000 as part of escrow in 2021. (*ASOF 95*)

11         The bottom line: an asset worth $3,000,000 went out of the estate and nothing of value

12   replaced it.  The net effect of the transaction in February 2021 was to deplete the bankruptcy

13   estate.  The eighth badge of fraud is satisfied.

### *Whether the Debtor was Insolvent or Became Insolvent Shortly*<br>*After the Transfer was Made or the Obligation was Incurred*

15         "Insolvency" is defined in Cal. Civ. Code § 3439.02.  In relevant part, § 3439.02 states that

16   a debtor is insolvent if, at fair valuation, the sum of the debtor's debts is greater than all the

17   debtor's assets. Cal. Civ. Code § 3439.02(a).  Alternatively, a debtor who is generally not paying

18   his or her debts as they become due is presumed to be insolvent. Cal. Civ. Code § 3439.02(b).

19   Failing to pay debts as they come due prior to the transfer creates a presumption of insolvency

20   which creates a burden on party against who the presumption is directed the burden of proving the

21   non-existence of insolvency. *Id.*  This alternate theory of insolvency is necessary due to the

22   difficulty imposed on a creditor in proving solvency in a bankruptcy sense.[15]  The Ninth Circuit

Pachulski Stang Ziehl & Jones LLP<br>Attorneys at Law<br>Los Angeles, California

---

[14] *See Kaisha v. Dodson*, 423 B.R. 888, 901-902(N.D. Cal., 2010).  (Reference to prior loans made between the parties were recharacterized in the agreement to create the illusion of consideration.)

[15] *In re L. Scott Apparel*, *2019 Bankr. LEXIS 1303, 129 (Bankr. C.D. Cal. 2019) According to the Legislative Committee Comment 3 to California Civil Code § 3439.02, this alternate theory of insolvency is necessary because of the "difficulties typically imposed on a creditor in proving insolvency in the bankruptcy sense." California Civil Code § 3439.02, Comment n. 3. Accordingly, the analysis of a debtor's general inability to pay debts under § 3439.02 relies on the case law interpreting Bankruptcy Code § 303(h)(1) (11 U.S.C.), which enumerates the general inability to pay debts as they become due as a ground for the filing of an involuntary bankruptcy petition. *See Id.* ("The case law that has developed under Section 303(h)(1) of the Bankruptcy Code has not required a showing that a debtor has failed or

1  has "adopted a 'totality of the circumstances' test for determining whether a debtor is generally not

2  paying its debts under 11 U.S.C. § 303(h)." *In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057,

3  1072 (9th Cir. 2002).  A debtor's default on their loan obligation despite demands or refusal to pay

4  is evidence the debtors were not paying their obligations as they became due and they were

5  therefore insolvent. *See Whatley v. Chatha (In re Chatha)*, 2019 Bankr. LEXIS 3212, *40-41

6  (Bankr. ED Cal. 2019).

7        In 2019 and 2020, the Debtor was in default on three properties excluding the Property

8  which was also in arrears. *(ASOF 75-85)*  Despite repeated demands of Kenneth to his father to

9  pay the Mortgage, the Debtor did not.  *(ASOF 87)*  Three months prior to the Transfer, the Debtor

10  was in arrears on the  Property in excess of $100,000.  As in *In re Chatha***Error! Bookmark not**

11  **defined.Error! Bookmark not defined.**, the Defendants' admission is evidence the Debtor was not

12  paying his debts as they became due. The failure to pay real property obligations is an indicia of

13  insolvency. (See Dec. P. Shields, §22)

14        In addition to the notices of default, numerous properties were in arrears such that they

15  were subject to an Election to Sell Under Deed of Trust.  *(ASOF 83, 84)*  *See United States v.*

16  *Dubey*, 1998 U.S. Dist. LEXIS 17512, *21 (E.D. Cal. 1998) (taxpayers not paying their taxes as

17  they became due, are presumed to have been insolvent at the time of the transfer).  Defaults on real

18  property obligations are material as they jeopardize a major asset class and risk acceleration of

19  debt and thus are a major indicator of inability to pay one's debts. *See Sarigianides v. Micromark*

20  *Internat., Inc.*, 2009 Cal. Super. LEXIS 3408, *10 (Micromark stopped paying property taxes and

21  attorney's fees which creates a presumption of insolvency under Cal. Civil Code § 3439.02(c).)

22  At this time, the Law Firm , which was his primary source of income according to tax returns, was

23  carrying a loss year over year in excess of $5 million such that it did not appear that income

24  generated could satisfy the defaults.  *(ASOF 106)*

25        Similarly, examining the nature of the debtor's conduct in his financial affairs, evidences

26

27  ─────────────

   refused to pay a majority in number and amount of his or her debts in order to prove general nonpayment of debts as
28  they become due.")

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   the Debtor's inability to record monies, monies of clients, and his overall disorganization.  The

2   Debtor, who had invested tens of thousands of dollars in various death benefits policies, realized

3   no income between 2011, when he assigned his interests to LCG, until the time of the Property

4   transfer, in February 2021. *(ASOF 74)*  As set forth in *Section IV(c),* in 2012, Frank Menlo, and in

5   March 22, 2013, 24 of the Menlo grandchildren demanded an accounting as required be prepared

6   annually by law. The Debtor's subsequent accountings were determined to be inadequate for three

7   accounting periods:  1996-2013; June 30, 2013-December 31, 2016; and January 1, 2017-

8   September 30, 2018.  Amongst the findings, the Debtor, was found to have commingled personal

9   funds with client funds — inappropriate conduct for a lawyer, evidencing his financial instability.

10   As noted in the Debtor's bankruptcy schedules, the Debtor was not paid for $3,000,000 to

11   $4,000,000 for services to the Menlos.[16] The evidence supports that the Debtor was in a cash

12   deficient position.

13        In February 2016, Jeffrey Siegel, the conservator appointed for claimant Scott, filed a

14   petition with the Los Angeles Superior Court to have the Siegel Trust brought under the

15   supervision of the court and for an accounting.  In response thereto, the Debtor issued an

16   accounting setting forth investments the Debtor made for Scott from January 1, 2005, to February

17   29, 2016, which included giving Scott unsecured non-recourse promissory notes in which the

18   Debtor was using the money outside the terms of the promissory notes. See *Section IV(c)*.  In

19   2019, the State of California investigated and filed an accusation against the Debtor for the

20   improper conduct taken with Scott's monies.  The Debtor surrendered his accounting license as a

21   result. The Debtor's defaults on real properties, including the Property, his inability to account for

22   client funds, the breadth of litigation surrounding such conduct, and his failure to maintain any

23   coherent or organized financial records are evidence of the surrounding circumstances which the

24   Debtor was not paying his debts and inappropriately using client monies.  The ninth badge of

25

26

27

28

---

[16] The Debtor's bankruptcy schedules reference that the Debtor was owed $3,000,000-$4,000,000 in legal fees which fees would most likely be uncollectible.  [See D.I. 62, p. 10 of 23]

1  fraud is satisfied.[17]

2              ***Whether the Transfer Occurred Shortly Before or Shortly
3                       After a Substantial Debt was Incurred***

4         Where a large verdict or judgment was issued shortly after the transfer, courts do not

5  hesitate to find this badge of fraud satisfied.  *See Bay State Milling Co. v. Martin*, 2001 U.S. Dist.

6  LEXIS 3402*7, (N.D. Ill. 2001) (Diane Franchi and Betty Lou Doty became debtors to Bay State

7  as a result of litigation that ensued prior to the transfer at issue and Bay State ultimately awarded

8  judgment for $200,000); *S. New Eng. Tel. Co. v. Sahara & Arden, Inc.*, 2010 U.S. Dist. LEXIS

9  51178, *32(Dist. Nev. 2010) (5 million dollar lawsuit pending at time of the transfer); *Stein v.

10 Duenas* (2015) 2015 Tex. App. LEXIS 8502, *14 (transfer occurred 3 months before Leon went to

11 mediation and judgment was incurred- a substantial debt incurred under Cal. Civ. Code §

12 3439.04(b)(10)); *Wolkowitz v. Beverly (In re Beverly)*, 374 B.R. 221, 238 (9th Cir. 2007) (transfer

13 was agreed upon in the midst of trial that led to a $ 424,450 judgment).

14        The Vago lawsuit which was pending prior to the Transfer, resulted in an adverse verdict

15 on September 15, 2022, in the amount of $24,334,038.99.  (*ASOF 58*)  The Debtor admitted that

16 neither he nor the Law Firm had sufficient assets to satisfy this judgment (*ASOF 105*)  On August

17 29, 2022, Glenn Reiser, Ret., issued the Court Appointed Referee's Report with findings of fact

18 and conclusions of law holding the Debtor liable in the amount of $30,401,823, before interest and

19 attorney's fees.  This lawsuit was also pending prior to the Transfer establishing in excess of

20 $55,000,000 in debt which was incurred <u>prior to or shortly after</u> the Transfer.  The tenth badge of

21 fraud is satisfied.

22        Once the badges of fraud are established, "the burden shifts to the transferee to prove some

23 legitimate supervening purpose for the transfers at issue," *Kelly v. Armstrong*, 141 F.3d 799, 802

24 (8th Cir. 1998) (internal citations omitted) (quoting *In re Acequia, Inc.*, 34 F.3d 800, 806 (9th Cir.

---

[17] The Transfer by Klein to his family members is avoidable on an intentional fraudulent conveyance claim regardless of whether there was some consideration or without regard to the Debtor's financial condition. *Stadtmueller v. Sarkisian (In re Medina)*, 619 B.R. 236, 244 (9th Cir. B,A.P. 2020); *In re Liquimatic Sys., Inc.*, 194 F. Supp. 625, 628 (S.D. Cal. 1961) ("[A] transfer made with actual intent to defraud creditors is fraudulent as to any creditor, regardless of whether the debtor-transferor was insolvent at the time of the transfer."  (Citations omitted)ZZZ0

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1994)), namely, that the transferee accepted the transfer in good faith and for value.  *See Ritchie*

*Capital Mgmt., LLC v. Stoebner*, 779 F.3d 857 (8th Cir. 2015), citing to *In re Acequia, Inc.*, 34

F.3d 800, 806 (9th Cir. 1994).

**c.    Defendants Have No Defense Under California Civil Code § 3439.08(a)**

Section 548(c) of the Bankruptcy Code creates a defense for an initial transferee of a

fraudulent transfer who takes the property in (1) good faith and (2) for value.  *See* 11 U.S.C.

§ 548(c)  The CUVTA includes an analogous defense.  *See* Cal. Civ. Code § 3439.08(a).

The defendant bears the burden of proof on this defense, and thus to defeat the avoidance

of a transfer on summary judgment, the defendant must offer affirmative evidence sufficient to

create a material issue of fact as to whether he took for value <u>and</u> in good faith.  *See In re Imperial*

*Corp. of Am.*, No. 92-1003-IEG (LSP), 1997 U.S. Dist. LEXIS 20943, at *8 (S.D. Cal. Aug. 12,

1997).

Because the Defendants provided no "value" as a matter of law, the Court need not

consider whether the Defendants were "good faith" transferees.  *See Kasolas v. Nicholson (In re*

*Fox Ortega Enters.)*, 621 B.R. 425, 468 (Bankr. N.D. Cal. 2021) (providing that "for value" and

"in good faith" is a conjunctive test); *see also*, e.g., Warfield, 436 F.3d 551, 560(5th Cir. 2006)

(holding that because the broker defendant could not have provided value, "[w]e need not draw a

conclusion on good faith").  Regardless, the Defendants indisputably did not receive the Transfer

in good faith.  To determine whether a transfer was in good faith, courts "look to what the

transferee objectively 'knew or should have known' . . . rather than examining what the transferee

actually knew from a subjective standpoint."  *In re Agric. Research & Tech. Grp., Inc.*, 916 F.2d

528, 535–36 (9th Cir. 1990).  Good faith is not present "if the circumstances would place a

reasonable person on inquiry of a debtor's fraudulent purpose, and a *diligent* inquiry would have

discovered the fraudulent purpose." *Id.* at 536.  A transferee does not act in good faith if he has

sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency.  *SEC v.*

*Med. Capital Holdings*, 2014 U.S. Dist. LEXIS 90586, *9 (Dist. C.D. Cal. 2014), citing to *In re*

*Moskowitz*, 10-73348-WLH, 2011 Bankr. LEXIS 4800, 2011 WL 6176210, at *13 (Bankr. N.D.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Ga. Nov. 28, 2011); *see also In re Nieves*, 648 F.3d 232, 238-39 (4th Cir. 2011) (stating that "a transferee does not act in good faith when he has sufficient [actual] knowledge to place him on inquiry notice of the debtor's possible insolvency").

Here, the facts are undisputed that Kenneth "had actual knowledge" of facts showing the bad acts and bad intent committed by his father, and he choose to take the Property specifically <u>because of those bad acts</u>.  In deposition, it was clear the Vago litigation was a substantial factor in the decision to transfer the Property out of his father's name:

> Q.  Well, what was it about the Vago lawsuit that made you think that the property needed to be—legal title needed to be in your name?
>
> A.  I just wanted it to be separated from my father.  I wanted to do my own thing. I don't want to be connected with any of that.
>
> (Depo. Kenneth, May 6, 2024,  p. 101, lns. 8-13, attached to Dec. of J. Nolan as Ex. C)

Kenneth was a named party in the Vago litigation.  The Complaint alleged a plethora of tortious acts committed by his father against the Vagos, similar to the acts of fraud and deception committed by the Debtor against the Menlos and Scott.  (*ASOF 53, ¶¶ 73-75*)  As a practicing lawyer, Kenneth could read the complaint, appreciate the breadth of the claims and his father's involvement in it.  At all times, Kenneth practiced law with or in his father's office building. *(JSOF 6, 7)* Similarly,  Shoshana knew about the Vagos' lawsuit too, and her husband being named in it. (*ASOF 107*) Shoshana knew the Menlos were major benefactors in the Jewish community of which the Defendants were a part and who were talking about the Debtor's tortious conduct.  (*ASOF 108*)  Kenneth testified that he knew that his father was not paying the Mortgage on the Property and it was in arrears. *(ASOF 75)  See AAAG-California, LLC v. Kisana*, 553 F. Supp. 3d 1042, 1049-50 (Dist. Utah, 2021) (defendant, insider, who admitted knowing of pending lawsuits and unpaid debts of transferor precluded from claiming protections of a "good faith" transferee).

However, "good faith" is lacking for an even more fundamental reason:  the Defendants participated in the fraudulent transfer.  A transferee does <u>not</u> act in good faith if he/she colludes

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   with the debtor or otherwise participates in the debtor's fraudulent scheme. *Damian v. A Mark*

2   *Precious Metals, Inc.,* 2017 U.S. Dist. LEXIS 216117*13-14 (C.D. Cal 2017). Similarly, an

3   unlawful intent is presumed from the doing of an unlawful act. Cal Civ Code § 668. Like his

4   father, Kenneth now claims that the Grant Deed the Debtor prepared and Defendant signed with

5   the County of Los Angeles was false. (*ASOF 109*) According to the Klein family, years later the

6   Property was not "a gift" but, was exchanged for valuable consideration.

7       The Debtor and the Defendants will attempt to rewrite the multitude of recorded

8   instruments for the Property to keep it away from legitimate creditors. The myriad of explanations

9   and contradictions are yet more proof that the Defendants lacked good faith and colluded with the

10  Debtor. Meanwhile, corroborating documents such as the Uniform Loan Application completed

11  by Kenneth are admissions against interest. His representations on two loan applications that he

12  was not involved in any lawsuits – an entirely false representation, he <u>rented</u> the Property and did

13  not own it, and had <u>no ownership interest</u> in any property in the last three years – demonstrate his

14  lack of good faith.

15  **C.      The Third Claim for Relief: The Transfer Was Constructively Fraudulent
            Under California Civil Code § 3439.04(a)(2)(B)**

16

17      The Transfer is also avoidable as a constructively fraudulent transfer. The Trustee may

18  avoid any transfer of an interest of the debtor if the debtor (i) "without receiving reasonably

19  equivalent value in exchange for the transfer," and the debtor either:

20       (A) Was engaged or was about to engage in a business or transaction for which
          the remaining assets of the debtor were unreasonably small in relation to the
21        business or transaction.

22       (B) Intended to incur, or believe or reasonably should have believed that the
          debtor would incur, debts, beyond the Debtor's ability to pay as they became
23        due.

24

25       § 3439.04(a)(2)(A)-(B)

26      Both constructive fraudulent transfer elements are satisfied here. *First*, as discussed in

27  detail in Section IV.E, as a matter of law, the Trustee is entitled to rely on the 2021 Grant Deed

28  memorializing the Transfer as a "*bona fide* gift" "and the grantor received nothing in return".

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Coupled with the Debtor's payment of the mortgage, real property taxes and insurance evidencing the Property was conveyed in 2021, for no value to the Debtor, let alone objectively quantifiable value, the Plaintiff has carried his burden with compelling evidence that "reasonably equivalent value" was not received by the Debtor in exchange for the Transfer.

**Second**, pursuant to Section 3439.04(a)(2)(B), a debtor's inability or lack of plan to satisfy long-term debt is evidence "the debtor would incur, debts, beyond the [d]ebtor's ability to pay as they became due.". *See Heller Ehrman LLP. v. Jones Day (In re Heller Ehrman, LLP),* 2013 Bankr. LEXIS 889, *37-38 (law firm had nothing more than hope to  resolve Heller's long-term obligations…and no present expectation to satisfy long term obligations does not satisfy objective test of § 3439.04(a)(2)(B) such that summary judgment on issue is proper.). It is undisputed that the Debtor had no intent or plan to satisfy the Vago lawsuit at the time of the Transfer.  In fact, he never planned to pay the Vagos "a dime" and had insufficient assets to do so:

> Q.   "Is it an accurate statement that that you didn't intend to pay the Vago's any amount of money?
>
> A.   That is correct.  Well, that's not true.  That is not true.  Because the Vago's got a lot of money from me because the Swiss banker didn't tell me until 2018 that Vago's brother never wired a dime to him.  So I only found out—and the meantime I was giving the Vago's a lot of money.
>
> Q.   Right.  But I mean as far as the lawsuit's concerned.
>
> A.   No, this lawsuit---
>
> Q.   I understand what you are saying, that you dispersed the money to the Vago's, but you may not have in retrospect.
>
> A.   Right.
>
> Q.   But as far as the lawsuit is concerned that was filed against you, you had no intention to pay the Vago's.
>
> A.   That is correct…."
>
> (Depo. of Debtor, June 28, 2024,  p. 122-123, lns. 11-2, attached to Decl. of J. Nolan as Ex. B)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Q.   "Attached as Ex.31 is the Judge's order and the jury sheet.   Do you see that?*

*A.   Well, the judge was an old senile judge who retired after this case, and had no clue of the law. I mean none.*

*Q.   Okay, if you go to the second to last page of Exhibit 31, it says Terry Green.   Is that the judge?*

*A.   Yeah, I don't see it, but Terry Green knows nothing about the law.*

*Q.   So page 23 of 25 at the bottom on the page, it says "total amount of the judgment against defendants jointly and severally, is $24,334,038.*

*A.   Yes, its on appeal.*

*Q.   Okay.   At the time this verdict was December 2, 2022; correct?*

*A.   Yes*

*Q.   Did the law firm of Les Klein & Associates have assets to satisfy this judgment?*

*A.   No.*

*Q.   Did you personally have assets sufficient to pay this judgment?*

*A.   I won't pay a dime of this judgment, ever.*

*Q.   Okay.   My question is a little different.   Did you have sufficient assets in December 2022 to satisfy this judgment for roughly $24 million?*

*A.   Probably not.*

(Depo. of Debtor, June 28, 2024,  p. 124-125, lns. 22-16; attached to Decl. of J. Nolan as Ex. B)

The Vagos were just the tip of the iceberg.  The Menlos' litigation was pending years <u>prior to</u> the Transfer and with liability <u>even larger</u> than the Vagos' claims.  Yet, the Debtor had no plan to address it other than abject denials.

*Q.   The Reiser report is dated August 29, 2022; correct?*

*A.   That's correct.*

*Q.   And did it come out and was it immediately given to the parties?*

*A.    I don't remember when it came out, but I had a different trial, the Vago trial, and the Reiser report came out before the jury was finished with the Vago trial so I don't know.*

*Q.    Okay, so the recommendation of the Referee, the retired judge, is $30,401,823.  Do you see that, footnote 52?*

*A.    footnote 52...*

*Q.    So is it your recollection that judge Reiser ruled against you in the amount of $30,401,823?*

*A.    The answer is its bogus.  He tripled all the damages.  The number that he has is 10 million, but the expert that the Menlo's hired, his whole testimony must be thrown out.*

*Q.    But I am asking you, was it your understanding that the referee's report and recommendation was to find liability against you in the amount of $30 million and change?*

*A.    Yes, but it's wrong....–"*

(Depo. of Debtor, June 28, 2024,  p. 89-90, lns. 9-9; attached to the Decl. J. Nolan as Ex. B)

The Debtor subjectively knew, and the complaints in both the Vago and Menlo litigation made clear to any reasonable person, that fraud and punitive damages were alleged and a distinct possibility given the egregiousness of the alleged conduct.  Thus, the evidence establishes that the Debtor knew he could not satisfy the obligation of either lawsuit and certainly not both. The debts were beyond his ability to pay when he transferred the Property and in constructive fraud of creditors under Cal. Civil Code § 3439.04(a)(2).  The Liquidating Trustee is entitled to summary judgment on his Third Claim for Relief.

**D.    The Second And Fourth Claims For Relief:  Pursuant To 11 U.S.C. §550(A) And California Civil Code § 3439.07, The Property Must Be Returned To The Bankruptcy Estate**

The Bankruptcy Code "enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee."  H.R. Rep. No. 595, 95th Cong. 1st Sess. 375 (1977). *Acequia, Inc. v. Clinton (In re Acequia, Inc.),* 34 F.3d 800 (9th Cir. 1994).  After demonstrating the right to recover conveyances under section 544(b), a trustee must then establish the amount of

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   recovery under section 550(a) of the Bankruptcy Code, which provides that, "to the extent that a

2   transfer is avoided under section 544 . . ., the trustee may recover, for the benefit of the estate, the

3   property transferred." 11 U.S.C. § 550(a)  Section 550(a) is intended to restore the estate to the

4   financial condition it would have enjoyed if the transfer had not occurred. *Pritchard v. Brown (In*

5   *re Brown)*, 118 Bankr. 57, 60 (Bankr. N.D. Tex. 1990)  *See Brun v. Madray (In re Brun)*, 360 B.R.

6   669, 675 (Bankr. C.D. Cal. 2007) (Stating that, as noted by *Collier*, the well-established purpose

7   of § 550 is to restore the estate to the position it would have occupied had the property not been

8   transferred.  *See,* 6 Collier on Bankruptcy, *supra*, P 550.02 [3]).

9       Transfer of property via grant deed is an asset subject to avoidance under the Bankruptcy

10  Code and CUVTA.  The proper remedy in a fraudulent conveyance claim is to rescind, or set

11  aside, the allegedly fraudulent transfer, and cause the transferee to return the transferred property

12  to the transferor.  *Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 189 (2nd Cir. 2006).  The

13  "purpose of such an action is to force the debtor to recover property transferred for inadequate

14  consideration so that the property can be used to satisfy the debt owed to the creditor." *Id.* at 189.

15  The creditor's remedy is "limited to reaching the property which would have been available to

16  satisfy the judgment had there been no conveyance, and requiring that it be restored to the debtor's

17  possession." *Id.*

18      Courts and litigants across the country, including the Ninth Circuit, recognize that a trustee

19  may recover the value of the transfer in its entirety for the benefit of all creditors.  *USAA Fed.*

20  *Savings Bank v. Thack (In re Taylor)*, 599 F.3d 880, 890 (9th Cir. 2010); *Aalfs v. Wirum (In re*

21  *Straightline Invs., Inc.)*, 525 F.3d 870, 883 (9th Cir.2008).  *See Parker v. Titan Mining (US) Corp.*

22  *(In re Star Mt. Res., Inc.),* 2022 Bankr. LEXIS 1000 (Bankr. AZ 2022).  Moreover, a trustee

23  typically has the ability to recover the property transferred, which would allow the estate to benefit

24  from any appreciation.  Section 550(e) demonstrates the intent of Congress that any appreciation

25  not attributable to the actions of a good faith transferee inure to the benefit of the estate." *Brun v.*

26  *Madray (In re Brun)*, 360 B.R. 669, 674 (Bankr. C.D. Cal. 2007).

27      California law favors the protection of creditors' rights and it is clear that the Property

28  should be immediately recovered regardless of any claims by Defendants who took without good

1  faith.

2                                          **V.**

3                                    <u>**CONCLUSION**</u>

4         WHEREFORE, the Trustee requests that this Court enter an order:

5         (1)     Avoiding the transfer of title of the Property from the Debtor to the Defendants as a

6   fraudulent transfer and determining that the Property is an asset of the Debtor's estate and is

7   recoverable pursuant to 11 U.S.C. §§544 and 550 and Cal. Civ. Code Sections § 3439.04(a) and §

8   3439.07, *et seq.*;

9         (2)     Declaring that the Grant Deed, instrument  #20210250012, as recorded on

10  February 12, 2021, and filed in the official records of the Los Angeles County, California, as

11  recorded for the Property and conveyed by the Debtor to the Defendants is avoided, and thereby

12  vesting title to the Property in the bankruptcy estate, including with it all legal and equitable rights

13  of ownership, including all authority to perform all acts as the property owner, or record any real

14  property transfer forms memorializing the transfer of legal title of the Property to the Trustee;

15        (3)     Order turnover by the Defendants of the physical property, including all associated

16  keys, and entrance cards; and

17        (4)     Reserving the issue of costs and attorney's fees to be determined on noticed

18  motion.

19  Dated:  November 8, 2024              PACHULSKI STANG ZIEHL & JONES LLP

20

21

22                                  By    */s/ Jeffrey P. Nolan*
                                         _____
                                         Jeffrey W. Dulberg
23                                       John W. Lucas
                                         Jeffrey P. Nolan
24
                                         Attorneys for Plaintiff, Bradley D. Sharp,
25                                       Chapter 11 Trustee

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA