1  Jeffrey W. Dulberg (State Bar No. 181200)
   John W. Lucas (State Bar No. 271038)
2  Jeffrey P. Nolan (State Bar No. 158923)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, California 90067-4003
4  Telephone: 310-277-6910
   Facsimile: 310-201-0760
5  Email: jdulberg@pszjlaw.com
          jlucas@pszjlaw.com
6          jnolan@pszjlaw.com

7  Attorneys for Plaintiff, Bradley D. Sharp,
   Chapter 11 Trustee

8

9                    UNITED STATES BANKRUPTCY COURT

                     CENTRAL DISTRICT OF CALIFORNIA

10                        LOS ANGELES DIVISION

11  In re                                    Case No. 23-10990-SK

12  LESLIE KLEIN,                            Chapter 11

13              Debtor.                      Adv. No. 2:23-ap-01167-SK

14  ───────────────────────────

15  BRADLEY D. SHARP, Chapter 11 Trustee,    **REPLY TO DEFENDANTS' OPPOSITION
                                             TO PLAINTIFF'S MOTION FOR
16              Plaintiff,                    SUMMARY JUDGMENT, OR IN THE
                                             ALTERNATIVE, SUMMARY
17     vs.                                    ADJUDICATION AS AGAINST
                                             DEFENDANTS KENNETH KLEIN AND
18  KENNETH KLEIN, aka KENNETH KOLEV          SHOSHANA KLEIN**
    KLEIN, aka KENNETH K. KLEIN, aka
19  KEN KLEIN, an individual; SHOSHANA       [Fed. R. Bankr. Proc. 56]
    SHIFRA KLEIN, aka SHOSHANA KLEIN,
20  aka SHOSHANA S. KLEIN, an individual,    Hearing:

21              Defendants.                  Date:   February 5, 2025
                                             Time:   9:00 a.m.
22                                           Place:  Edward R. Roybal Federal Building
                                                     and Courthouse
23                                                   255 E. Temple Street, Courtroom 1575
                                                     Los Angeles, CA 90012
24

25                                           Judge: Honorable Sandra R. Klein

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT: ...................................................................................................1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS .............................................................3

    A.    161 N. Poinsettia Property .................................................................................3

    B.    306 N. Highland Property ...................................................................................4

    C.    The February 12, 2021, Transfer Recorded As A Bona Fide Gift For No Consideration Received ...................................................................................5

    D.    Documents Produced By Defendants In the Litigation...................................5

III. ARGUMENT ..........................................................................................................................6

    A.    The Opposition Admits That The Transfer At Issue Occurred On February 12, 2021, And Is Presumed Under California Law to Include Both Legal and Beneficial Ownership ...........................................................................6

    B.    Defendants Legal Theory To Fit Within An Exception To The Bright Line Rule Is Fundamentally Flawed ........................................................................7

    C.    In Limited Circumstances, California Courts Have Allowed Beneficial Title To Be Returned To The Grantor In Circumstances Of An Unfulfilled Event, A Situation Which Does Not Exist In The Present Case. .........................9

    D.    The Court Need Not Entertain the Argument of An Undisclosed Oral Agreement And Events from 15-20 Years Ago If the Evidence Supports The Debtor As Exercising Dominion and Control Over the Highland Property After 2006...........................................................................11

    E.    The Alleged Oral Agreement Would Violate The Statute Of Frauds And The Parol Evidence Rule........................................................................13

    F.    The Submission Of Sham Declarations Which Contradict Prior Testimony Or Uncontroverted Facts Does Not Create An Issue Of Material Fact To Deny Summary Judgment ........................................................................13

    G.    The Intent of the Debtor, Not of The Defendants and Neighbors, Is the Proper Focus in a Fraudulent Conveyance Transfer. .................................14

    H.    The Motion Established Seven Badges Of Fraud Labelling The Subject Transfer To Be Presumptively Fraudulent And Shifted The Burden To The Defendants To Provide Compelling Evidence To The Contrary ...................15

    (1)  Whether the Transfer or Obligation Was to an Insider; §3439(b)(1) ...............16

    (2)  Whether the Transfer or Obligation Was Disclosed or Concealed; §3439(b)(2)...............................................................................16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(3)  Whether Before the Transfer was Made or Obligation Was Incurred, the
Debtor had Been Sued or Threatened With Suit; §3439(b)(4).....................17

(4)  Whether the Debtor Removed or Concealed Assets: §3439(b)(7)...................19

(5)  Whether the Value of the Consideration Received by the Debtor Was
Reasonably Equivalent to the Value of the Asset Transferred or the
Amount of the Obligation Incurred: §3439(b)(8) ..........................................20

(6)  Whether the Debtor was Insolvent or Became Insolvent Shortly After
the Transfer was Made or the Obligation was Incurred; §3439(b)(9).........23

(7)  Whether the Transfer Occurred Shortly Before or Shortly After a
Substantial Debt was Incurred: §3439(b)(10) ...............................................24

I.    The Opposition Fails To Rebut Or Introduce Any Admissible Evidence To
Rebut The Badges Of Fraud.................................................................................25

J.    The Third Claim for Relief: The Transfer Was Constructively Fraudulent
Under California Civil Code § 3439.04(a)(2)(B).......................................................28

IV. CONCLUSION ................................................................................................................29

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

# TABLE OF AUTHORITIES

2

## CASES

3 *AAAG-California, LLC v. Kisana*,
   553 F. Supp. 3d 1042 (Dist. Utah, 2021 .................................................. 31

4
*Ash v. Moldo*,
5    2006 Bankr. LEXIS 4855 (9th Cir. BAP 2006) ....................................... 23

6 *Bay State Milling Co. v. Martin*,
   2001 U.S. Dist. LEXIS 3402, (N.D. Ill. 2001) ....................................... 28

7
*Borgfeldt v. Curry*,
8    25 Cal. App. 624, 144 P. 976 (Cal. App. 1st Dist. 1914) ................... 16, 21

9 *Carloss v. County of Alameda*,
   (1st Dist. 2015) 242 Cal. App. 4th 116 ..................................................... 7

10
*Chen v. Berenjian*,
11    33 Cal. App. 5th 811 ................................................................................ 16

12 *Church of Hakeem, Inc. v. United States*,
   No. C-79-0741 SW, 1979 U.S. Dist. LEXIS 10057, 1979 WL 1475 (N.D. Cal. Aug.
13    31, 1979) ................................................................................................... 12

14 *Counter v. Counter*,
   104 Cal App. 2d 786, 789 (1951) ............................................................. 11

15
*Damian v. A Mark Precious Metals, Inc.*,
16    2017 U.S. Dist. LEXIS 216117 (C.D. Cal 2017) .................................... 31

17 *Decker v. Voisenat (In re Serrato)*,
   214 B.R. 219 (Bankr. N.D. Cal. 1997) ................................................... 18

18
*Ezra v. Secor (In re Ezra)*,
19    537 B.R. 924 (9th Cir. B.A.P. 2015) ............................................ 17, 20, 21

20 *Gottlieb v. Rose (In re Khalil)*,
   2015 Bankr. LEXIS 1976, *27 (Bankr. C.D. Cal. 2017) .......................... 7

21
*Halperin v. Morgan Stanley Investment Mgmt. (In re Tops Holding II Corp.)*
22    646 B.R. 617 (Bankr. SDNY 2022 ........................................................ 17

23 *Heller Ehrman LLP. v. Jones Day (In re Heller Ehrman, LLP)*,
   2013 Bankr. LEXIS 889, *37-38 ............................................................. 33

24
*In re Garoian*,
25    2014 Bankr. LEXIS 5254 (Bankr. C.D. Cal. Oct. 7, 2014) .................... 16

26 *In re Imperial Corp. of Am.*,
   No. 92-1003-IEG (LSP), 1997 U.S. Dist. LEXIS 20943 (S.D. Cal. Aug. 12, 1997) .......... 29

27
*In re Marriage of Brooks & Robinson*,
28    (2008) 169 Cal. App. 4th 176,185 ......................................................... 7, 8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*In re Marriage of Fossum*
(2011) 192 Cal.App.4th 336, 121 Cal. Rptr. 3d 195 ............................................... 7

*In re Marriage of Lucas*
(1980) 27 Cal. 3d 808 [166 Cal. Rptr. 853, 614 P.2d 285] ..................................... 9

*In re Marriage of Weaver*,
224 Cal App. 3rd 478, 486(1990) .......................................................................... 8

*In re Marriage of Weaver*,
224 Cal App. 3rd 478, 486(1990) .......................................................................... 8

*In re Moskowitz*,
10-73348-WLH, 2011 Bankr. LEXIS 4800, 2011 WL 6176210
(Bankr. N.D. Ga. Nov. 28, 2011) ...................................................................... 30

*In re Nieves*,
648 F.3d 232 (4th Cir. 2011) .............................................................................. 31

*In Re Sloan*,
2016 WL 1267833 (Bankr., CA 2016) ................................................................. 2

*Ingrim v. Ellis (In re Ingrim Family, LLC)*,
2019 Bankr. LEXIS 1922 (9th Cir. BAP 2019) ................................................... 14

*Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*,
263 B.R. 406 (S.D.N.Y. 2001) ........................................................................... 24

*Kasolas v. Nicholson (In re Fox Ortega Enters.)*,
621 B.R. 425 (Bankr. N.D. Cal. 2021) ............................................................... 29

*Kelly v. Armstrong*,
141 F.3d 799 (8th Cir. 1998) ............................................................................. 29

*Lo v. Lee, supra*,
24 Cal.App.5th ................................................................................................. 16

*Nordberg v. Republic Nat'l Bank (In re Chase & Sanborn Corp.)*,
51 Bankr. 739 (Bankr. S.D. Fla. 1985) ............................................................. 21

*Olson v. Olson*
4 Cal.2d 434, 437, 49 P.2d 827 (1935) .............................................................. 11

*Perez v. Bui (In re Tenorio)*,
2018 Bankr. LEXIS 456, *28(9th Cir. BAP 2018 ................................................ 17

*Prince Fashions, Inc. v. 60G 542 Broadway Owner, LLC (In re Prince Fashions, Inc.)*
2024 Bankr. Lexis 1698, *27 (Bankr. S.D.N.Y. 2024) ....................................... 12

*Ritchie Capital Mgmt., LLC v. Stoebner*,
779 F.3d 857, 863 (8th Cir. 2015) ................................................................. 23, 29

*S. New Eng. Tel. Co. v. Sahara & Arden, Inc.*,
2010 U.S. Dist. LEXIS 51178 (Dist. Nev. May 24, 2010 ..................................... 19

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Sarigianides v. Micromark Internat., Inc.*,
    2009 Cal. Super. LEXIS 3408 ............................................................................... 27

*SEC v. Med. Capital Holdings*,
    2014 U.S. Dist. LEXIS 90586 (Dist. C.D. Cal. 2014) ........................................ 30

*Sharp v. Roscoe's Intellectual Props. LLC (In re East Coast Foods, Inc.)*,
    2017 Bankr. LEXIS 2410 (Bankr. C.D. CA 2017) ............................................ 20

*Stein v. Duenas*
    (2015) 2015 Tex. App. LEXIS 8502, *14 ............................................................. 28

*Tatung Co. v. Shu Tze Hsu*,
    217 F. Supp. 3d 1138 (C.D. Cal. 2016) ............................................................... 16

*Thornhill Publishing Co. v. General Telephone & Electronics Corp.*,
    594 F.2d 730 (9th Cir. 1979) ................................................................................ 12

*U.S. v. Licavoli*,
    604 F.3d 613 (9th Cir. 1979) ................................................................................ 25

*United States v. 5208 Los Franciscos Way*,
    385 F.3d 1187 (9th Cir. BAP 2004 ...................................................................... 21

*United States v. Dubey*,
    1998 U.S. Dist. LEXIS 17512 (E.D. Cal. 1998) ................................................ 27

*United States v. Garcia*,
    291 F.3d 127 (2nd Cir. 2002) ............................................................................... 15

*United States v. Kaiser*,
    609 F.3d 556 (2d Cir. 2010) ................................................................................. 25

*Wells Fargo Bank, N.A. v. Genung*,
    (W.D. Wash. 2012) 2012 U.S. Dist, LEXIS 197365 .......................................... 20

*Whatley v. Chatha (In re Chatha)*,
    2019 Bankr. LEXIS 3212, *40-41 (Bankr. ED Cal. 2019) ................................. 26

*Wood v. Kaplan*,
    178 Cal. App. 2d 227, 2 Cal. Rptr. 917 (1960) .................................................. 18

*Yeager v. Bowlin*,
    693 F. 3d 1076, (9th Cir. 2012) ............................................................................ 14

*Yee v. Panrox Internat. (USA), Inc.*,
    97 Cal. App. 5th 470, 479 (2nd Dist. 2023) ......................................................... 7

*Yellowstone v. Roofian*,
    2021 Cal. Super. LEXIS 43390, *11 .................................................................... 23

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

## STATUTES

2  11 U.S.C. §541(a)(1) .......................................................................................................... 6

3  11 U.S.C. § 548(a)(1)(B)(ii) ............................................................................................ 29

4  Cal. Civ Code § 668 ......................................................................................................... 28

5  Cal. Civil Code §1710 ...................................................................................................... 17

6  Cal. Civ. Code § 1710(3) .................................................................................................. 17

7  Cal.Civil Code § 3439.04(A)(1) ....................................................................................... 14

8  Cal.Civ. Code §3439(b)(1) ............................................................................................... 16

9  Cal. Civ. Code §3439(b)(4) ............................................................................................... 19

10 Cal. Civ Code §3439(b)(10) .............................................................................................. 24

11 Cal. Civil Code § 3439.01 ................................................................................................. 15

12 Cal. Civ. Code § 3439.02(b) .............................................................................................. 29

13 Cal. Civ. Code § 3439.02(c) .............................................................................................. 24

14 Cal. Civ. Code §3439.04 ..................................................................................................... 3

15 Cal. Civ. Code § 3439.04(a)(2)(A) .............................................................................. 28, 29

16 Cal. Civ. Code § 3439.04(a)(2)(B) .............................................................................. 28, 29

17 Cal. Civ. Code §3439(b)(2) ............................................................................................... 16

18 Cal. Civ. Code §3439(b)(7) ............................................................................................... 19

19 Cal. Civ. Code §3439(b)(8) .......................................................................................... 20, 26

20 Cal. Civ. Code §3439(b)(9) ............................................................................................... 23

21 Cal. Civ. Code § 3439.04(b)(10) ....................................................................................... 25

22 Cal. Evid. Code §622 ......................................................................................................... 6

23 Cal. Evid. Code § 662 ........................................................................................................ 6

24 Cal. Evid. Code § 1603 ...................................................................................................... 7

25 Cal. Evid. Code §1600 ....................................................................................................... 6

26

## OTHER AUTHORITIES

27 Title 18 United States Code, Sec, 1001 .............................................................................. 26

28

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

**I.**

**PRELIMINARY STATEMENT:**

The Defendants' Cross Motion, as well as their Opposition to Plaintiff's motion for summary judgment (the "Opposition"),[1] seeks to subvert hornbook real property and fraudulent conveyance law for their sole benefit based on an unpublished opinion that is simply not on point with the facts of this case.  The Defendants would have this Court sanction the obviously fraudulent transfer of real property which by all rights should be used to satisfy the millions of dollars of unpaid claims in the Debtor's chapter 11 case.

Under California law, the holder of legal title for a given real property is presumed to be the owner of full beneficial title which includes all legal and beneficial interest in said property. In the present case, it is an uncontroverted fact that the Debtor – while inundated with lawsuits charging him with virtually countless acts of wrongdoing – transferred via grant deed **all** legal and beneficial ownership in the Highland Property to his son on February 12, 2021 (the "Transfer"), for no stated consideration. Indeed, the Debtor undertook the Transfer on the eve of verdicts which reached in excess of $50 million.

In an effort to contend that the grant deed father and son executed in 2021 is not what it states on its face, the Opposition contends that the Trustee cannot avoid the Transfer as the Transfer was of "bare legal title," and nothing more.  According to the Opposition, California law would allow an undocumented oral agreement to strip a property of its beneficial interest such that it could be concealed from the public for 15 years or more, as in the present case.  No California law cited by the Defendants supports this specious argument.  Rather, the Defendants misread California case law in an effort to fashion a remedy to suit their purpose.  Concealed oral side agreements attempting to vest either beneficial or legal title are unenforceable between a grantor and a grantee to a recorded instrument, let alone between a party *not* in privity to the recorded instrument.

---

[1] See Plaintiff's *Motion for Summary Judgment Or In The Alternative Summary Adjudication* (the "Summary Judgment Motion") Dkt #47. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Summary Judgment Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Here, the undisputed facts are that in 2006, the parties to the grant deed (which Defendants

2    seek to re-write) were Rafael and Deborah Deutsch (the "Deutsches"), on the one hand, and the

3    Debtor and Erika Klein, his late wife (the "Kleins"), on the other.  Any remedy under California

4    law that allows that a "beneficial interest" in real property to reside with a party other than the

5    stated grantee, would be limited to the grantor.  In this case, even if the Court determined such

6    extreme circumstances were present, it still would not benefit the Defendants as only the grantors

7    would have the beneficial interest returned to them.  As such, no factual or legal scenario under

8    California law permits the Defendants to claim that an undocumented oral side agreement can strip

9    a beneficial interest in the Highland Property and place it in the hands of a third party who was not

10   the grantor under the 2006 transfer of the Highland Property to the Debtor.

11   In their Motion, the Defendants go to great lengths to analogize the instant case with Judge

12   Kwan's unpublished opinion in *In re Sloan*.  However, the Court need not entertain the

13   Defendants misplaced efforts to pervert Judge Kwan's ruling.  The uncontroverted facts confirm

14   that the Debtor exercised his beneficial interest in the Highland Property such that he and his wife

15   held both beneficial and legal title to the Highland Property, as community property, after the

16   2006 transfer of the Highland Property to the Debtor.  By (a) applying for a loan in his and his late

17   wife's name, (b) paying for taxes, (c) paying for property insurance, and (d) paying the mortgage,

18   it is indubitable that the Debtor held the beneficial interest in the Highland Property subsequent to

19   the claimed undocumented oral side agreement from 2006.  To remove all semblance of doubt, the

20   Debtor authored and recorded an *Affidavit of Surviving Spouse* on November 18, 2013, wherein he

21   announced to the world that "the property has at all times since the acquisition been considered

22   community property of the Debtor and his deceased wife."  (JSOF 10).  As such, any argument

23   hinged on an undisclosed oral agreement in 2006 stripping beneficial title is spurious.  The

24   mountains of declarations filed by the Defendants' friends and family as to their beliefs, or the

25   existence of the undocumented oral agreements in 1998 and 2006, are "red herrings."

26   The Trustee acknowledges that it is the Trustee's burden to convince this Court that the

27   February 12, 2021 Transfer, was a "transfer of an interest in property" under state and federal law.

28   The Motion relied on the California Evidence Code as interpreted under California law that a duly

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    executed and recorded grant deed is presumed to convey all beneficial and legal interest in real

2    property.

3        The Motion carried the Plaintiff's burden of proof.  This Reply will respond in two parts to

4    the arguments in the Opposition.

5        First, this Reply will make clear that the unpublished opinion of Judge Kwan, and the legal

6    authorities cited in the Opposition, have no application to the present case.  In fact, they expose the

7    Defendants' argument as nothing more than an attempt to enforce an alleged 15-year-old oral

8    agreement in violation of the statute of frauds and parol evidence rules.  Even if the Sham

9    declarations submitted in opposition to the Motion were true, it would not change the outcome.[2]

10        Second, this Reply will confirm that seven "Badges of Fraud" as enumerated in California

11    Civil Code §3439.04, are present which mark the Transfer as a fraudulent conveyance.  The

12    Defendants have failed to carry their burden nor identify a plausible defense that is supported by

13    admissible evidence.

**II.**

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

16        In Support of Plaintiff's motion for summary judgment, Plaintiff submitted *Plaintiff's*

17    *Additional Statement of Uncontroverted Facts* (the "ASOF" ). Dkt. No. 49. "ASOF" #37-110.

18    The ASOF support the Statement of Undisputed Facts submitted as part of the Motion at pages 3-

19    11.  Notably, however, the Defendants failed to submit a separate statement disputing each

20    material fact, or submit evidence or other documents, to dispute the existence of each fact set forth

21    in the ASOF as required by LBR 7056-1-(c)(2)(B). The Plaintiff submits that each fact is thus

22    undisputed and should be admitted as a part of the record in these proceedings in addition to the

23    parties Joint Statement of Undisputed Facts ("JSOF").

24    **A.    161 N. Poinsettia Property**

25        On September 22, 1998, Abe and Leah Coleman, sold the real property at 161 N.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[2] The Opposition's request that the Court could "contrive new remedies" that violate the law should not be well received as it simply ignores the devastation caused to creditors and society by the Debtor's actions.  (Opp., pg 25, ln 6-7)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Poinsettia Ave., Los Angeles (the "Poinsettia Property") to Bay Area Development Company

2   ("BADCO" ).  (JSOF 31, Dkt. No. 48).  The Poinsettia Property was purposely titled in the name

3   of BADCO with the Defendants' consent so that the Debtor could alienate the Poinsettia Property

4   in accordance with his business dealings and/or pay himself back.  This was not the only occasion

5   that the Debtor and Kenneth utilized BADCO to further the Debtor's business interests.  On

6   December 21, 2004, the Debtor, his wife, and Kenneth transferred the 419 N. Highland property

7   by grant deed to BADCO. (ASOF 77, Dkt. No. 49).

8        At all times from 1998 through July 30, 2018, BADCO was the record owner of the

9   Poinsettia Property until it was transferred by quitclaim deed to the Debtor.  (JSOF 32-35, Dkt.

10  No. 48).

11  **B.    306 N. Highland Property**

12       In July 2006, pursuant to a grant deed recorded on August 25, 2006, the Kleins purchased

13  the "Highland Property," as husband and wife, from the Deutsches. (JSOF 8, Dkt. No. 48).  The

14  Debtor testified that the grant deed comports with his belief of an intent to purchase the Highland

15  Property as title was taken. (Depo. of L. Klein, 6/28/24, pg. 55, ln 10-14, attached to Second

16  Nolan Decl., Ex. C).

17       The Kleins, as borrowers, executed a Deed of Trust in favor of Washington Mutual Bank,

18  recorded in the amount of $1,203,000, as secured by the Highland Property (the "Mortgage").

19  (JSOF 9, Dkt. No. 48).  The Mortgage attaches a deed of trust.

20       The Debtor executed a rider wherein he and his wife stated their intention with respect to

21  the Highland Property:  "Borrower shall occupy, and shall only use, the Property as Borrower's

22  second home.  Borrower shall keep the Property available for Borrower's exclusive use and

23  enjoyment at all times and shall not subject the Property to any timesharing or other shared

24  ownership arrangement …or any person any control over the occupancy or use of the Property."

25  (Dkt. No. 48-2; JSOF 10, Ex. B, batestamp LACOUNTYREG 000031).

26       On November 18, 2013, the Debtor recorded with the County of Los Angeles Recorder's

27  Office an *Affidavit of Surviving Spouse* declaring himself the sole owner of the Highland Property,

28  representing that at all time since the acquisition, the Highland Property had been the exclusive

community property of the Kleins.  (JSOF 10; *See* Affidavit).  The affidavit was notarized by Kenneth. (Id.)

**C.**    **The February 12, 2021, Transfer Recorded As A Bona Fide Gift For No Consideration Received**

On November 4, 2020, Kenneth executed a Uniform Residential Loan Application to submit to banks wherein he declared under Title 18 of the United States Code, Sec 1001, *et seq.*, that (a) he had <u>no</u> ownership interest in any property in the last three years, (b) he was <u>not</u> a named party to a lawsuit, and (c) he <u>rented</u> the Highland Property for the past 13 years.  (*JSOF 17*).

On February 9, 2021, the same day as he was deposed in the Siegel litigation, the Debtor executed a grant deed wherein the Debtor transferred the Highland Property to the Defendants as "a bona fide gift," and as memorialized, "the grantor received nothing in return." (i.e., the Transfer) (*ASOF 93; JSOF 21*).

**D.**    **Documents Produced By Defendants In the Litigation**

Plaintiff's Request For Production of Documents ("RFP") requested from the Defendants all documents regarding the 161 N. Poinsettia Property ("Poinsettia Property"), and specifically evidencing how the Defendants acquired (RFP #7), resided in (RFP #12), paid real property taxes on (RFP #10), and incurred or made expenditures for it (RFP #11), as well as its value if it was exchanged as part of the Transfer of the Highland Property. (RFP #2).  In response to propounded discovery, the Defendants produced 41 pages as bate-stamped by Defendants  "DEFS 0001-0041".  Of the 41 pages of documents, only DEFS 0041, a blank check, was produced as a responsive document on the Poinsettia Property. (*See* Defendants' documents produced in Response to RFP, attached to the Second Decl. of Jeffrey Nolan, ¶11, Ex H).

Plaintiff's RFP requested from the Defendants all documents regarding the 306 N. Highland Property, and specifically evidencing how the Defendants acquired (RFP #7), resided in (RFP #12), paid real property taxes on, (RFP #10), and incurred or made expenditures for it (RFP #11) as well as its value if it was exchanged as part of the Transfer. (RFP #2). (*See* Defendants' documents produced in Response to RFP, attached to the Second Decl. Nolan, ¶11, Ex H).

Plaintiff's RFP requested from the Defendants all documents relating to any payments made by the Debtor to the Defendants on their behalf, i.e. gifts. (*See* Defendants' documents produced in Response to RFP, attached to the Second Decl. Nolan, ¶11, Ex H).

**III.**

**ARGUMENT**

**A.**    **The Opposition Admits That The Transfer At Issue Occurred On February 12, 2021, And Is Presumed Under California Law to Include Both Legal and Beneficial Ownership**

The Parties are in agreement, as outlined in the Summary Judgment Motion, that section 541(a)(1) of the Bankruptcy Code provides that the commencement of a case creates an estate which "is comprised of all the following property, wherever located and by whomever held  . . [e]xcept as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (Dkt. No. 47, Summary Judgment Motion pg. 14-15, ln 1-9); (Dkt. No. 63,Opp. pg 24, ln 14-17).  The Parties have stipulated that there was a "transfer" of legal title, which occurred on February 12, 2021, which was an "interest in property" of the estate" under section 541(a)(1).  However, the Defendants now insist that the Debtor did not hold a beneficial interest in the Highland Property on February 12, 2021, as the "beneficial interest" was stripped from the grant deed by the Debtor and the Defendants 15 years earlier when the Highland Property was transferred by the Deutsches as grantors, to the Kleins, as grantees, as their community property. (Id., Opp., pg. 23-24).

Throughout their pleadings, the Defendants do not dispute the Plaintiff's citation to and application of California law.  California law places an exceedingly high burden on a defendant to refute the truth of a recorded instrument.  In their opposition to the Summary Judgment Motion, the Defendants admit the application of Evidence Code §1600 [Official record of document], §622 [Facts recited in a written instrument], and §662[Owner of legal title to property is the owner of beneficial title] to the facts of the present case. (Id., Opp. pg. 27).  Under California's "form of title" presumption, the description in a deed as to how title is held presumptively reflects the actual ownership status of the property. *In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 344, 121 Cal. Rptr. 3d 195. This common law presumption is codified in California Evidence Code § 662,

1   which states:

2           "**The owner of the legal title to property is presumed to be the owner
            of the full beneficial title**."

3

4           This presumption may be rebutted *only by clear and convincing proof.*  The presumption is

5   based on the promotion of a public policy that favors the stability of titles to property.  *Id*. at 345,

6   citing to *Brooks* at p. 185. California Evidence Code § 1603 establishes a *prima facie* rebuttable

7   presumption that the Debtor, named in a recorded deed, was the beneficial owner of the real

8   property.  *Yee v. Panrox Internat. (USA), Inc.,* 97 Cal. App. 5th 470, 479 (2nd Dist. 2023) *Carloss*

9   *v. County of Alameda*, (1st Dist. 2015) 242 Cal. App. 4th 116.  The reason the burden of proof is

10  so high is "society and the courts have a reluctance to tamper with duly executed instruments and

11  documents of legal title." *In re Marriage of Brooks & Robinson,* (2008) 169 Cal. App. 4th

12  176,185.  *See also Gottlieb v. Rose (In re Khalil)*, 2015 Bankr. LEXIS 1976, *27 (Bankr. C.D.

13  Cal. 2017). This standard requires evidence "that is so clear as to leave no substantial doubt and

14  sufficiently strong to command the unhesitating assent of every reasonable mind."  *In re Marriage*

15  *of Weaver*, 224 Cal App. 3rd 478, 486 (1990).

16

17  **B.**    **Defendants Legal Theory To Fit Within An Exception To The Bright Line Rule Is**
            **Fundamentally Flawed**

18

19          The Opposition claims that two oral side agreements, one occurring in 1998 and the other

20  in 2006, stripped the "beneficial interest" in the recorded instruments outside the confines of

    California's real property recordation laws. This argument is fundamentally flawed.

21          The presumption of title can be overcome only by evidence of an agreement or

22  understanding between the parties that the title reflected in the deed is not what **the parties**

23  intended**.** *In re Marriage of Brooks & Robinson, supra, 169 Cal.App.4th 176*, 189-190 (2008).  In

24  *Brooks*, the husband had agreed that title would be held in the wife's name.  The court held that

25  the husband did not have an interest in the property as a matter of law.  His acquiescence in

26  allowing the wife to take title to the property solely in her name triggered the presumption in

27  Evidence Code § 662, that the property was the wife's separate property.  There was no testimony

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   or other evidence from which a court could infer that the husband and the wife had an agreement

2   or understanding that the property would be held other than as stated in the deed.

3       In the present case, the evidence before the Court indicates that the Deutsches and the

4   Debtor intended to take title to the Highland Property, in the name of the Debtor and his wife, i.e.,

5   the Kleins, as community property.  The Cross Motion submits no evidence from the grantor of a

6   mistake or error in conveying legal and beneficial ownership of the Highland Property to the

7   Debtor and his wife.  The Debtor testified in deposition that the grant deed transferred from the

8   Deutsches comports with his recollection of how he intended to take ownership of the property:

9       Q.      I asked you if Exhibit 13 comports with your recollection that for 306 N. Highland
10      Avenue, it was purchased by Leslie Klein and Erika Klein, husband and wife, as community
        property from Rafael & Deborah Deutsch?
11      A.      The answer is yes.
        (Depo. of L. Klein, 6/28/24, pg. 55, ln 10-14, attached to Second Nolan Decl., Ex. C).

12      As such, it is clear that legal and beneficial ownership of the Highland Property resided at

13  all times, as intended, with the Kleins as community property since the time of the transfer in

14  2006. The passage of beneficial interests was consistent with the recorded deed. (JSOF 8).

15      The Defendants contend there was an undocumented oral agreement between the Debtor

16  and the Defendants that the Highland Property was to be the Defendants' property. The

17  Defendants introduce declarations from the Defendants, friends, and family members in an effort

18  to establish the existence of not one, but two oral agreements spanning back to 1998. However, the

19  Defendants claimed belief cannot supplant the intent of the Deutsches and the Kleins, to vest full

20  legal and equitable ownership interest in the Kleins, as community property. The Defendants blur

21  this legal distinction and the term "parties" in an effort to introduce their alleged oral transfer

22  agreement.

23      To utilize the Defendants incorrect legal standard would lead to absurd results. Mountains

24  of lawsuits would be filed and the courts would be awash in self-serving declarations of friends

25  and family members as to what they thought or were told, in an effort to challenge a duly recorded

26  instrument. *See* Objections to Decl. of Kenneth & Shoshana Klein, filed concurrently herewith.

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1      Nor can facially valid, recorded instruments, and the burden impressed on a challenging

2  party, be rebutted by undocumented oral agreements. The burden of proof under California

3  Evidence Code §662 cannot "be overcome by testimony of a hidden intention not disclosed to the

4  other grantee at the time of the execution of the conveyance."  *In re Marriage of Lucas* (1980) 27

5  Cal. 3d 808 [166 Cal. Rptr. 853, 614 P.2d 285].  Said another way, even if the Debtor had a hidden

6  intention not disclosed to the grantors, the Kleins' concealed intention would fail to rebut the

7  evidentiary presumption.  The Defendants effort to strip beneficial title from the 2006 grant deed

8  and place it with the Defendants fails.  It is clear the Debtor had full equitable and legal title to the

9  Highland Property when he fraudulently conveyed it to Defendants in 2021.

10  **C.**     **In Limited Circumstances, California Courts Have Allowed Beneficial Title To Be
     Returned To The Grantor In Circumstances Of An Unfulfilled Event, A Situation
11     Which Does Not Exist In The Present Case.**

12      The Defendants ask this Court to rely on an unpublished opinion from a California

13  bankruptcy court despite the fact that California law expressly prohibits California courts from

14  relying on unpublished opinions. See Cal. R. Ct. 8.115.[3] In other words, a California state court

15  adjudicating this issue of California law would not -- and, as a matter of law, could not -- rely on

16  this unpublished opinion. Notwithstanding, the Opposition cites to it extensively. The case has no

17  application to the present facts.

18      In *In Re Sloan,* 2016 WL 1267833 (Bankr., CA 2016), Martha Boozer ( "Martha" ), an

19  elderly woman in need of medical care, transferred her 50% interest in her home, to her son Victor

20  Sloan, the debtor. The quitclaim deed to Victor was executed on March 20, 2010, for no

21  consideration, to permit Victor to apply for a loan with the proceeds to be used to care for his

22  ailing mother. Martha passed away nine months later. The purpose behind the conveyance never

23  occurred given his mother's death, and Victor did not apply for the loan. Instead, he transferred

24  the 50% interest to his brother, Lavell, seven months later in June 2011. In May 2012, Victor filed

25

26  [3] Rule 8.1115. Citation of opinions, Ca Rules of Court, 2024, states: (a) Unpublished opinion: Except as provided in
    (b), an opinion of a California Court of Appeal or superior court appellate division that is not certified for publication
27  or ordered published must not be cited or relied on by a court or a party in any other action; (b) Exceptions, An
    unpublished opinion may be cited or relied on: (1) When the opinion is relevant under the doctrines of law of the case,
28  res judicata, or collateral estoppel; or (2) When the opinion is relevant to a criminal or disciplinary action because it
    states reasons for a decision affecting the same defendant or respondent in another such action.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   for bankruptcy. The trustee sought to avoid the transfer of the property via quitclaim deed from the

2   debtor to Lavell.

3       Judge Kwan held the transfer of the 50% interest from Martha to Victor was made between

4   the grantor and grantee for the purpose of Victor applying for a loan. Since the triggering event did

5   not occur, the beneficial interest did not pass to Victor in March 2010, but was retained by the

6   grantor, Martha.  Judge Kwan held that given the extreme circumstances, the grantor, retained the

7   beneficial interest in the real property despite having conveyed her 50% interest by recorded grant

8   deed to her son Victor. Even though she conveyed legal title by grant deed to Victor, Judge Kwan

9   ruled the " beneficial interest " <u>remained with the grantor</u>. Id at *8.

10      Judge Kwan examined and was persuaded by *Olson v. Olson,* 4 Cal.2d 434, 437, 49 P.2d

11  827 (1935), wherein a property was transferred via grant deed for the purpose of obtaining a loan.

12  When the loan was not obtained, the court ruled that the form of title could be rebutted essentially

13  to undo the transfer given the existence of the unfulfilled event.  In *Olson*, the court allowed the

14  beneficial interest in the real property to reside with the grantor.  Id. at 9.

15      Assuming it even should be considered given its non-publication, the *Sloan* opinion is not

16  on point with the fact pattern before the Court.  In the present case, the transfer from the Deutsches

17  to the Kleins was <u>not</u> contingent upon the occurrence of any event.  Nor was the conveyance made

18  for the benefit of the Deutsches.  Lastly, there was no unfulfilled event.  The Debtor obtained the

19  loan. The case has no application to the present fact pattern.  From the perspective of equity

20  (which appears to have been a driving concern to Judge Kwan), there is no reason to undue the

21  Transfer or strip away beneficial title here.  Unlike the events of *Sloan* where the debtor exerted no

22  control over the property other than recording the grant deed, in the present case, the Debtor

23  exercised all dominion and control over the Highland Property for 15 years.

24      The Defendants also cite at length to *Counter v. Counter*, 104 Cal App. 2d 786, 789 (1951)

25  for the proposition that physical delivery of a grant deed raises an inference that the grantors are

26  immediately parting with title, but that inference may be overcome by evidence showing that such

27  was not the intention of the grantor. (Opp. pg. 28, ln 12-14).  However, if one applies that

28

1   principle from *Counter* to the present facts, once again, beneficial title would remain with *the*

2   *grantor*.  Quite simply, the Opposition misapplies California law.

3   **D.**     **The Court Need Not Entertain the Argument of An Undisclosed Oral Agreement And
            Events from 15-20 Years Ago If the  Evidence Supports The Debtor As Exercising
4          Dominion and Control Over the Highland Property After 2006.**

5        "A person who exercises acts of ownership over property is presumed to be the owner of

6   it."  California Evidence Code § 638. The Opposition comes forward with no admissible evidence

7   or facts upon which a trier of fact could conclude Defendants exercised any ownership over the

8   Highland Property. In point of fact, all the evidence is directly to the contrary.

9        Placing assets in the name of one's self is an indicia of ownership. *Church of Hakeem, Inc.*

10  *v. United States,* No. C-79-0741 SW, 1979 U.S. Dist. LEXIS 10057, 1979 WL 1475, at *5 (N.D.

11  Cal. Aug. 31, 1979) (holding that a person placing bank account and vessel in his name

12  represented to many people that he was the owner of the assets). The undisputed evidence shows

13  that the Highland Property was in the name of the <u>Debtor</u> at all times. (JSOF 12; Dkt. No 48).

14       An indicia of ownership includes the payment of property taxes. *Prince Fashions, Inc. v.*

15  *60G 542 Broadway Owner, LLC (In re Prince Fashions, Inc.)* 2024 Bankr. Lexis 1698, *27

16  (Bankr. S.D.N.Y. 2024).  At all relevant times from 2006 to at least January of 2020, the <u>Debtor</u>

17  paid the real property taxes incurred by the Highland Property and owed to the County of Los

18  Angeles. (JSOF 12).  At all relevant times from 2006 to sometime in 2020, the Debtor paid the

19  insurance on the Highland Property. (JSOF 14).  At all relevant times from 2006 , the Debtor paid

20  the Mortgage. (JSOF 13).

21       In response to discovery propounded upon the Defendants on March 4, 2024, they

22  produced <u>no documents </u>to demonstrate they resided in, improved, or repaired the Highland

23  Property. The discovery request sought: "all documents which support, or upon which Defendants

24  base any contention that Defendants resided in 306 N. Highland," and "all documents relating to

25  any expenditure made by Defendants for the 306 N. Highland Real Property." *See* Second Decl.

26  Nolan, ⁋11, RFP, No. 5 & 6, attached as Ex. E.  No responsive documents were produced from the

27  Defendants for the time period of 2006 to 2020. *See* Second Decl. Nolan, ⁋11, RFP, attached as

28  Ex. H). See *Thornhill Publishing Co. v. General Telephone & Electronics Corp.,* 594 F.2d 730,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   738 (9th Cir. 1979) (stating "[i]f, indeed, evidence was available to underpin the conclusory

2   statement, Rule 56 required (the party opposing summary judgment) to come forward with it.").

3   A total of 41 pages of documents were produced by Defendants which the Trustee attaches to

4   these papers. *See* Second Decl. Nolan, Req. Produce, No. 5, attached as Ex. H.[4]

5          The record confirms that in addition to record title, the <u>Debtor</u> exercised all acts of

6   ownership over the property. The evidence referenced above overwhelmingly demonstrates the

7   Debtor maintaining all indicia of ownership consistent with his title on the Highland Property. The

8   Debtor maintained both legal and equitable title to the Highland Property prior to the subject

9   Transfer.

10         The recorded documents from 2006 until the death of Erika Klein are consistent with full

11  legal and beneficial title residing with the Debtor. It is a uncontroverted fact that on November 18,

12  2013, over seven years after the acquisition of the Highland Property, the Debtor prepared and

13  recorded the *Affidavit of Surviving Spouse* with the County Recorder of Los Angeles, representing

14  that the Debtor and his late wife held all ownership interest in the property. *See* JSOF, 10,

15  referencing Exhibit " C ", Affidavit of Surviving Spouse. The Affidavit of Surviving Spouse,

16  executed by the Debtor, was notarized by Kenneth, and asserts:

17         **" That the above-described property (306 N Highland) has been at all times**

18         **since acquisition considered the community property of him/her and**

19         **decedent**."

20         The express and implied representation contained therein is clear to all the public that the

21  property has <u>not</u> been passed to someone other than the affiant, and the Debtor possessed <u>full</u>

22  ownership. *Id.*

23

24

25

26  _____

27         [4] Moreover, in the Uniform Residential loan Applications completed by Kenneth on November 4, 2020, <u>and again on February 23, 2021,</u> he declares that the Defendants **rented** the property. (JSOF No. 17, 24; ASOF 86). The Motion cited to this fact, and Defendants' admission is clear from their silence.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**E.**      **The Alleged Oral Agreement Would Violate The Statute Of Frauds And The Parol Evidence Rule.**

Recognition of the undisclosed oral agreement would also run afoul of California evidentiary doctrines, the statute of frauds and the parol evidence rule.  Rather than repeat the law and argument here, Plaintiff references and directs the Court to this analysis as contained in the Opposition to the Defendants' Cross Motion.

**F.**      **The Submission Of Sham Declarations Which Contradict Prior Testimony Or Uncontroverted Facts Does Not Create An Issue Of Material Fact To Deny Summary Judgment**

In the Ninth Circuit, a party cannot create an issue of fact to survive summary judgment by submitting an affidavit contradicting his or her prior deposition testimony.  The Sham Affidavit Rule prevents a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony.  *Yeager v. Bowlin*, 693 F. 3d 1076, (9th Cir. 2012).  Similarly, a deponent who remembers almost nothing about the events central to the case during his or her deposition, but suddenly recalls those same events with perfect clarity in his or her declaration in opposition to summary judgment, should have their testimony dismissed.  Id at 1080.  *Ingrim v. Ellis (In re Ingrim Family, LLC)*, 2019 Bankr. LEXIS 1922, *8 (9th Cir. BAP 2019) (stating "the declaration is conclusory and lacks detailed facts and corroborating evidence; indeed, the only documentary evidence is inconsistent. This renders the declaration insufficient to create a genuine issue of material fact.").

According to the Opposition, the Court should be persuaded by the declarations of the Defendants, their friends, and family because it was their "understanding" that the Poinsettia Property would be owned and belong to the Defendants. Their belief, notably, is contrary to what the Debtor testified took place.  The Debtor testified that the Poinsettia Property was <u>transferred by design</u> to <u>BADCO</u> so it could loan monies to the Debtor.  The Opposition cites to no evidence that BADCO intended to convey anything to the Defendants, legal, equitable or otherwise. The Defendants submit under penalty of perjury declarations of apparent outrage that "neither of us or the Stearns were aware that legal title to the Poinsettia Property was not in our names, but placed in the name of Bay Area Development Company…." (Dkt. No. 69, Decl. Kenneth, ¶9) (Dkt no.

72, Decl. Shoshana, ¶9).  Yet, the Debtor testified the Defendants were aware of and acquiesced to the role of the shell game employed by the Debtor and BADCO so the Debtor had the ability to move monies in and out of the corporation and take loans against the property:

> Q.  " So if I understand your testimony correctly, Bay Area never owned the 161 N. Poinsettia property and they were never on titled as being the legal owner of the 161 N. Poinsettia property?
> A.  No, that's not correct. 161 N. Poinsettia was purchased, and when it was purchased, it was the property of Kenneth and Shoshana Klein. They lived there for a number of years, eight or nine years.
>
> Q.  But that wasn't my question. I asked you about title---?
> A.  Title was in Bay Area development company, yes.
>
> Q.  OK and why is Bay Area Development company on title if they don't have any interest in the property?
> A.  Because Leslie Klein lent 600, $700,000 as a gift, it was, not a loan. But in the event that Leslie Klein needed money, they (defendants) agreed to allow Bay Area, which is a company, to hold title to repay my loan. "
> (June 28, 2024, Depo. Leslie Klein, pg. 13-14, lines 18–9, attached to Second Nolan Decl., Ex. C)

Meanwhile, the Defendants testimony at deposition was that they never bothered to ask who was on legal title to the Poinsettia Property between 1998 and 2006. *See* Objections and Req. to Strike Dec's. of Shoshana Klein; Kenneth, filed concurrently herewith.  Many statements of the declarants contradict their declarations and are properly rejected in accordance with the Sham Affidavit Rule.  If they do not contradict their prior testimony, the remaining statements contradict undisputed facts.  "When a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701 . . . because there is no way for the court to assess whether it is rationally based on the witness's perceptions . . ." *United States v. Garcia*, 291 F.3d 127, 140 (2nd Cir. 2002).  The Defendants' declarations do not create issues of material fact.

## G.      The Intent of the Debtor, Not of The Defendants and Neighbors, Is the Proper Focus in a Fraudulent Conveyance Transfer.

The Motion correctly cites to the legal standard and authorities both in California and throughout the United States. The proper analysis in a fraudulent conveyance action under the CUVTA is to focus on the intent of the Debtor, transferor. *See* Motion, Dkt. No. 47; pgs. 12-13, Section B; *In re Garoian*, 2014 Bankr. LEXIS 5254, at *70 (Bankr. C.D. Cal. Oct. 7, 2014) ("In a

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    fraudulent transfer inquiry based on actual intent, the court should focus on the state of mind of

2    the transferor.").  The main thrust of the Opposition, i.e., that while the Debtor is a bad guy, there

3    is no evidence the Defendants were "bad people" (Dkt. No. 63, Opp., pg. 3, lns 13-15) or that

4    Plaintiff must submit facts "to implicate the Defendants," or the Defendants must have been

5    shown to "participate or benefit directly from the Debtor's bad acts," is simply a misstatement of

6    the legal standard and its application. (Id., Opp. pg. 7, ln 22-34).

7         The purpose of the CUVTA is to protect creditors from schemes to place assets beyond

8    their reach. *Chen v. Berenjian*, 33 Cal. App. 5th 811, 822, (citing to *Lo v. Lee, supra*, 24

9    Cal.App.5th at p. 1071).  Courts are to liberally construe California's Uniform Voidable

10   Transactions Act ("CUVTA"), California Civil Code § 3439.01, *et seq.*, "with a view to effecting

11   their purpose." *Tatung Co. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, citing to *Borgfeldt v. Curry*, 25

12   Cal. App. 624, 144 P. 976, 977 (Cal. App. 1st Dist. 1914).  Their purpose "undoubtedly is to

13   prevent debtors from placing property which legitimately should be available for the satisfaction

14   of demands of creditors beyond [creditors'] reach." *Id.*

15
16   **H.    The Motion Established Seven Badges Of Fraud Labelling The Subject Transfer To Be Presumptively Fraudulent And Shifted The Burden To The Defendants To Provide Compelling Evidence To The Contrary**

17        The Opposition concedes that two or three "badges of fraud" are present, but no more.

18   (Opp. pg. 29, ln 19-22).  The Opposition claims that the absence of badges of fraud "by the same

19   token, ipso facto, should establish that no intent existed." (Opp. pg. 30, ln 2-3).  The Opposition is

20   incorrect as to both statements.

21        "No single factor necessarily is determinative, and no minimum or maximum number of

22   factors dictates a particular outcome. . . . [T]he list should not be applied formulaically. Instead,

23   the trier of fact should consider all of the relevant circumstances surrounding the transfer." *In re

24   Ezra*, 537 B.R. at 931 (citations omitted). *Perez v. Bui (In re Tenorio)*, 2018 Bankr. LEXIS 456,

25   *28(9th Cir. BAP 2018) "There is no minimum number of factors that must be present before the

26   scales tip in favor of finding of actual intent to defraud." *Filip v. Bucurenciu*, 129 Cal. App. 4th

27   825, 834, 28 Cal. Rptr. 3d 884 (3rd Dist. 2005). As such, the claim that one or more missing

28   badges dictate a non-finding of fraud is a self-serving and a misstatement of law. (*Halperin v.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  *Morgan Stanley Investment Mgmt. (In re Tops Holding II Corp.*) 646 B.R. 617, 675(Bankr. SDNY

2  2022) ("The proper inquiry is whether the badges of fraud are present, not whether some facts are

3  absent.").  Second, the Opposition does not dispute the California authorities finding liability on a

4  fraudulent conveyance cause of action on summary judgment wherein two, three, four, or five

5  badges of fraud are established. (Dkt. No. 47, Motion, pg. 17-18, ln 16-7).  Under the Defendants'

6  view of the legal standard, each of those cases (*Filip v. Bucurenciu*, *Walldesign, Boyce,* and

7  *Mendez v. Keeling)*, were wrongly decided since, ipso facto, the other badges of fraud were not

8  established.

9        The record before the Court establishes seven badges of fraud and the circumstances

10  surrounding the Transfer demonstrate an extreme fraudulent conveyance case considering the

11  magnitude of the harm caused to creditors and the admission that the Transfer occurred because of

12  the litigation pending against the Debtor.[5]  Below, the Plaintiff addresses the badges of fraud

13  which Defendants denied at pages 15 through 20 of the Opposition.

14        **(1)  Whether the Transfer or Obligation Was to an Insider; §3439(b)(1)**

15        The Opposition admits the Motion establishes this badge of fraud. (Dkt. no. 63, Opp. pg.

16  15, ln 9).  However, it is clear under California law that transfers between a parent and child

17  require a higher level of proof of the fairness to creditors. *See Decker v. Voisenat (In re Serrato),*

18  214 B.R. 219, 229 (Bankr. N.D. Cal. 1997) (the relationship of parent and child, when coupled

19  with other suspicious circumstances, gives rise to an inference of fraud. *Wood v. Kaplan*, 178 Cal.

20  App. 2d 227, 230, 2 Cal. Rptr. 917, 919 (1960)).  In such cases, "the parties are held to a fuller and

21  stricter proof of the consideration, and of the fairness of the transaction." *Id*. at 230.[6]

22        This badge of fraud is entitled to special consideration since it implies the transfer was not

23  an arm's length commercial transaction.

24        **(2)  Whether the Transfer or Obligation Was Disclosed or Concealed;**
        **§3439(b)(2)**

25

26  [5] Kenneth testified that he and his father transferred the subject grant deed specifically because of the creditors' claims
in the Vago lawsuit. (Dkt No. 47, Motion, pg 29, ln 4-12)

27  [6] Courts elsewhere strictly scrutinize intrafamily transfers without any signs of tangible consideration as
presumptively fraudulent. United States v. Mazzeo, 306 F. Supp. 2d 294, 311 (E.D.N.Y. 2004) vacated on other
28  grounds.

1    The Opposition contends this badge of fraud is not met. (Opp. pg. 15, ln 22).  Yet, the

2  Opposition submits no evidence to controvert the evidence offered by the Trustee, or submit

3  evidence of its own.  The Opposition makes no effort to address California law as to concealment

4  (Civil Code §1710), and the Debtor/transferor's sworn deposition testimony admitting that what

5  he executed was false.  The Opposition responds that the grant deed reflects the true fact, i.e., that

6  the transaction was a gift. (JSOF 20). But what about the other half of the statement contained in

7  the grant deed that the grantor received nothing in return?

8    The Defendants claim that the Debtor received a $1.2 million to $1.3 million conveyance

9  in exchange for the Highland Property.  The Defendants allegedly gave consideration to the

10  Debtor by paying off the mortgage the Debtor took out when he acquired the Highland Property in

11  2006. (Opp., pg 18, §H)(JSOF 8, 9).  If true, the Debtor <u>did</u> receive something in return and the

12  statement in the grant deed is false or misleading. The suppression of a fact, by one who is bound

13  to disclose it, or who gives information of other facts which are likely to mislead for want of

14  communication of that fact is "concealment" under California law. *See* Cal. Civ. Code § 1710(3).

15  The grant deed was false as the Debtor testified to and referenced in his deposition. (Motion, Dkt.

16  No. 47, pg 19).

17    Courts have deemed a transfer to be concealed for purposes of a fraudulent transfer

18  analysis where the formal documentation did not reflect the actual circumstances surrounding the

19  transfer. *S. New Eng. Tel. Co. v. Sahara & Arden, Inc.*, 2010 U.S. Dist. LEXIS 51178, *19 (Dist.

20  Nev. May 24, 2010).  Remarkably, the Opposition claims the grant deed gave constructive notice

21  to creditors that there was more going on than stated on the face of the deed. The second badge of

22  fraud is established.

23    **(3)  Whether Before the Transfer was Made or Obligation Was Incurred,
        the Debtor had Been Sued or Threatened With Suit; §3439(b)(4)**

24

25    The Opposition admits the Motion establishes this badge of fraud but attempts to play

26  down its significance. (Opp., Dkt. No. 63, pg. 16, ln 14).  The Plaintiff submits this badge of fraud

27  alone should be persuasive evidence of a fraudulent conveyance.

28    When a transaction occurs at a time when the debtor was the subject of a "slew of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  lawsuits," a transfer cannot in any sense of the word be characterized as an "arms-length"

2  transaction.  *See Sharp v. Roscoe's Intellectual Props. LLC (In re East Coast Foods, Inc.)*, 2017

3  Bankr. LEXIS 2410, *23(Bankr. C.D. CA 2017). Where parties act in concert to transfer property

4  while immersed in litigation, courts are persuaded a fraud has been committed. In *Wells Fargo*

5  *Bank, N.A. v. Genung,* (W.D. Wash. 2012) 2012 U.S. Dist, LEXIS 197365, the Court was

6  impressed with the fact the defendant executed a quitclaim deed the day before the scheduled

7  nonjudicial foreclosure sale as an indication of an intent to defraud. *Id*. at 26.

8      The Opposition does not dispute the slew of lawsuits that were pending against the Debtor

9  prior to and at the time of the Transfer as well as the magnitude of bad acts and findings in those

10  lawsuits. (ASOF 37-73).  The number of lawsuits was extensive.  The uncontroverted facts are not

11  just that the lawsuits existed, but the fact these lawsuits steadily increased and had come to a head

12  in 2020. The former clients, who are now creditors, were no longer limited to just the than 24

13  aggrieved Menlo parties. (Id, ASOF 49).  Instead, it included the Vendrigers, Vagos, Sigel,

14  Mermelsteins and Bergers. (Id, ASOF 37-73).  In addition, the State of California had stepped in

15  to investigate given the widespread claim of improprieties.  The Debtor stipulated to surrendering

16  his law license only 8 months prior to the Transfer. (Id; ASOF 64-65).  As referenced from his

17  deposition in the Motion, the Debtor had no intention of paying the Vagos who subsequently took

18  the case to trial and were awarded a $24,000,000 verdict. (Id, ASOF 58). The Vagos did what any

19  rational person would expect, let alone two lawyers. The Vagos immediately went out to seek and

20  attach assets of the Debtor. (Id, ASOF 59).  However, the Highland Property was no longer under

21  the Debtor's name to be attached.

22      As noted in *East Coast Foods, supra*, the onslaught of litigation at the time of a transfer is

23  a compelling factor to indicate the Transfer was not an arm's-length conveyance, but rather done

24  in frustration of creditors' rights. *See Ezra v. Secor (In re Ezra)*, 537 B.R. 924, 931 (9th Cir. B.A.P.

25  2015) (finding the threat of litigation arising from specific claims had significantly increased,

26  which only served to reinforce the bankruptcy court's determination that the debtors executed the

27  deed of trust for the purpose of keeping any equity in their residence as far away from their

28  creditors as possible.).  The third badge of fraud is met.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**(4)  Whether the Debtor Removed or Concealed Assets: §3439(b)(7)**

The Opposition contends this badge of fraud is not met. (Opp. pg. 18, ln 5).  Yet, the Opposition submits no evidence to controvert the evidence offered by the Trustee, or submit evidence of its own.

The Opposition does not dispute the law.  The extensive and often circuitous movement of funds among several entities controlled by a debtor for his personal benefit coupled with the fact that records of such transactions are in general disarray establish a badge of fraud to hinder, delay and defraud creditors.  *See Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 806 (9th Cir. 1994), citing to *Nordberg v. Republic Nat'l Bank (In re Chase & Sanborn Corp.)*, 51 Bankr. 739, 740-41 (Bankr. S.D. Fla. 1985).  *In re Ezra v. Seror (In re Ezra)*, 537 B.R. 924 (9th Cir. B.A.P. 2015), the bankruptcy court noted that the debtor was engaged in a pattern and practice of shielding assets from creditors evidencing concealment and an intent to defraud.  The court inferred from the entirety of the debtor's conduct, the debtor engaged in a pattern and practice of obfuscating his dealings. *Id*. at 931. Similarly, in looking at the entirety of the debtor's conduct, courts take judicial notice of prior courts findings. *See United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1192 (9th Cir. BAP 2004) (court citing transcript of debtor's sentencing hearing, during which court found expressly that the transfer was an effort on debtor's part to conceal assets and remove them from the reach of the government).

At the initiation of the bankruptcy case, the Trustee's forensic accountants were advised by the Debtor that he did not maintain physical copies of his financial records.  (Dkt. No. 50, Decl. Troszak, ¶3).  At the conclusion of the Menlo trial, the settlement referee found the Debtor had concealed and disposed of Menlo Trust Assets in bad faith. (ASOF 45; Dkt No. 49).  In fact, it was noted the Debtor refused to account for many years until forced to do so by the Court, and even after a decade of litigation, still refuses to account for 156 years of collective trust management. (Id, ASOF 46).  The Debtor ran literally thousands of transactions through his law firm account commingled with his client's funds as "one big pot." (Id, ASOF 37, fn. 21).  The Debtor maintained "no trust files of his own and had no legitimate recordkeeping system." (Dkt. No. 53, Ex. 1,p. 23, lns. 15-16).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    The Opposition notes that Judge Luna's findings that the Debtor willfully and

2   contemptuously failed to comply with the court's order to disclose information was almost three

3   years after the Transfer. (Id, ASOF 48, ¶9(d)).  Yet, Judge Luna's conclusion in the Menlo

4   litigation confirm the earlier findings of the Honorable Glenn Reiser (Ret.) that the Debtor had

5   concealed his dealings prior to the time of the Transfer.

6    Plaintiff has submitted multiple declarations from Nicholas Troszak documenting his

7   investigation of the Debtor's financial affairs. Mr. Troszak identifies over 25 legal entities

8   associated with the Debtor between 2015 and 2021, as well as monies passing between the

9   respective entities as enabled through Les Klein & Associates. (Id, ASOF 98-99). While the

10   Debtor initially disclaimed any association with the various entities, he eventually changed his

11   testimony and admitted he set them up. (Id, ASOF 100).  The evidence supports the finding that

12   the Debtor concealed assets.  In fact, the Debtor has refused to comply even when faced with court

13   orders. The fourth badge of fraud is satisfied.

### (5)  Whether the Value of the Consideration Received by the Debtor Was Reasonably Equivalent to the Value of the Asset Transferred or the Amount of the Obligation Incurred: §3439(b)(8)

16    The Opposition contends that this badge of fraud is not established.  The Opposition

17   submits oral testimony in the form of declarations to controvert the evidence offered.  The

18   Defendants contend they transferred the Poinsettia Property to the Kleins in 2007,[7] and in

19   exchange were given the Highland Property. (Opp, pg 18, ln, 21-24). The single paragraph

20   explanation is implausible on its face and contradicted by undisputed facts.

21    The Opposition does not dispute where the Court should start; in the context of a

22   fraudulent conveyance action, grant deeds memorializing a transfer as a "gift" or for "no

23   consideration" are persuasive evidence that in fact no consideration was given.  *See Yellowstone v.*

24   *Roofian*, 2021 Cal. Super. LEXIS 43390, *11 (grant deed to insider recorded as a gift); S*ee also,*

25   *Ash v. Moldo*, 2006 Bankr. LEXIS 4855 (9th Cir. BAP 2006) (quitclaim deed memorializing no

---

[7] Defendants claim the Poinsettia Property was worth 1.2-1.3M based on the declaration of the Debtor's daughter, Sheri Beinstock.(See Obj and Req. to Strike Decl. of Bienstock)

1    consideration given for the transfer).  Here, the uncontroverted facts establish a recorded grant

2    deed which on its face memorialized a "bona fide gift." (*JSOF 22*).  Defendant and the Debtor

3    labelled the Transfer as, "grantor receiving nothing in exchange." *See Ritchie Capital Mgmt., LLC*

4    *v. Stoebner, 779 F.3d 857,* 863 (8th Cir. 2015) ("The fact that valuable property has been

5    gratuitously transferred raises a presumption that such transfer was by actual fraudulent intent.")

6         As stated in the Summary Judgment Motion, no documents were produced by the

7    Defendants during discovery to evidence that the Defendants owned any real property in 2006, or

8    conveyed any property to the Debtor in 2007. (Dkt No. 47, Motion, pg. 23) (*ASOF 103*).  It strains

9    credulity for the Opposition to contend that the Poinsettia Property, titled as of 1998 in the name

10   of BADCO, was exchanged to the Kleins when it is an uncontroverted fact that the Poinsettia

11   Property remained in the name of BADCO until July 30, 2018. (JSOF 35).  The claim they

12   transferred an asset they did not own, or the Kleins received the Poinsettia Property in 2007, is

13   contradicted by the real property records and the undisputed facts. (JSOF 30-35).  When

14   questioned, Defendant Shoshana Klein was unequivocal that she knew of no such exchange:

15       Q. Yeah, I'm sorry. The debtor is Leslie Klein. Do you have any information regarding the
         transfer of the Poinsettia property to Leslie Klein in or around 2006?
16       A. I don't.
         Q. Do you know if that, in fact, occurred?
17       A. I don't.
         Q. Do you have any information today that you can offer to me to support that the
18       Poinsettia property was ever given to Leslie Klein in 2006?
19       A. I don't.

20       (Depo. Shoshana, May 7, 2024, pg. 82, ln 12-21, attached to Second Nolan Decl., ¶4, Ex
         B)
21

22       Even if the recorded documents did not contradict the Defendants' testimony, the argument

23   that the Poinsettia Property was exchanged in 2007 and qualifies as value for an exchange in 2021,

     should also be rejected as value given must be <u>contemporaneous</u> with the suspect transfer. *See*

24   *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.*), 263 B.R. 406, 467 (S.D.N.Y. 2001)

25   (finding the requirement that the debtor must have "received" the value in question expresses a

26   temporal condition demanding an element of contemporaneity in the determination of whether

27   something close to the reasonable equivalence has been exchanged).  No fact or law supports the

28

1   Defendants' claim that anything was received by the Debtor and it was reasonably comparable to

2   the loss of an asset worth $3 million.

3       The record is also clear that no monies or value were contemporaneously paid to the

4   Debtor or placed into escrow to benefit the Debtor. (Dkt. No. 49, ASOF 104).  The "purchase

5   price," as Kenneth described it, was only what was necessary to clear the mortgage from the title

6   so Defendants could get it out of the Debtor's name and encumber the property with their own

7   loan. Two weeks later, they closed escrow and the encumbrance owed to WAMU was paid off and

8   replaced with a new mortgage of almost like amount — $822,000 owed to Guaranteed Rate, Inc.

9   (JSOF 18, 23, 24).  The $108,000 that the Defendants paid for closing costs related to their new

10  loan is not consideration that ran to the Debtor.

11      The Opposition seeks to contest the appraised value of the Highland Property located

12  within the loan file commissioned by the bank at the time of the Transfer.  Courts allow business

13  records to be admitted and specifically appraisals as long as they appear reliable.  *United States v.*

14  *Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010); *see U.S. v. Licavoli,* 604 F.3d 613, 622 (9th Cir. 1979)

15  (admitting appraisal into evidence under business records exception to hearsay rule upon finding

16  circumstantial evidence of trustworthiness in record and evidence the business entity relied on it).

17  There is no evidence of unreliability in the appraisal or the bank loan files which includes the

18  affidavit of the custodian of records in response to a duly issued subpoena.  The Defendants

19  submitted a broker opinion letter issued by the Debtor's daughter, Sheri Beinstock, to claim there

20  is a factual issue which warrants the denial of summary judgment.  However, Ms. Beinstock is not

21  a licensed appraiser and her 2023 opinion was not rendered contemporaneously with the Transfer.

22  *See* Objection to Decl. of Sheri Beinstock, filed concurrently herewith.

23      The record is clear that an asset valued at $3 million is presumed under California law to

24  be transferred for no consideration where it was designated as a gift and memorialized in a grant

25  deed, wherein the transferor declared he received "nothing in return."  No monies were paid to the

26  Debtor through escrow and the claim of other property exchanged is premised on conveying an

27  asset to the Debtor that Defendants did not own. Shoshana Klein even does not recall such event

28  occurring. The fifth badge of fraud is satisfied.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**(6)  Whether the Debtor was Insolvent or Became Insolvent Shortly After the Transfer was Made or the Obligation was Incurred; §3439(b)(9)**

The Opposition contends this badge of fraud is "unclear." (Opp. pg. 19, ln 8).  The Opposition submits no evidence to controvert the evidence offered by the Trustee, nor does it submit evidence of its own.

A debtor who is generally not paying his or her debts as they become due is presumed to be insolvent.  Cal. Civ. Code § 3439.02(b). This alternate theory of insolvency is necessary due to the difficulty imposed on a creditor in proving solvency in a bankruptcy sense.[8] Failing to pay debts as they come due prior to a contested transfer invokes a presumption of insolvency which places a burden on the party against whom the presumption is directed to prove the non-existence of insolvency.  *Id.*  A debtor's default on his or her loan obligation despite demands or refusal to pay is evidence the debtor was not paying his or her obligations as they became due and such debtor was therefore insolvent. *See Whatley v. Chatha (In re Chatha)*, 2019 Bankr. LEXIS 3212, *40-41 (Bankr. ED Cal. 2019).

The Trustee submits that while the evidence is limited, the inability to provide more detailed or probative financial information to the Court is specifically due to the conduct of the Debtor. As noted by the Honorable Glenn Reiser, Ret., and the Honorable Maria Luna, this Debtor simply refuses to comply with his disclosure obligations. (*Id.*, ASOF 46-48).

It is an uncontroverted fact that in 2020, the Debtor was in default on the Highland Property. (*Id.*, JSOF 16) Despite repeated demands of Kenneth to his father to pay the Mortgage, the Debtor did not. (Dkt No. 49, ASOF 87) Three months prior to the Transfer, the Debtor was in arrears on the Property in excess of $100,000. (Id. ASOF 75) As in *In re Chatha*, the Defendants'

---

[8] *In re L. Scott Apparel*, *2019 Bankr. LEXIS 1303, 129 (Bankr. C.D. Cal. 2019) According to the Legislative Committee Comment 3 to California Civil Code § 3439.02, this alternate theory of insolvency is necessary because of the "difficulties typically imposed on a creditor in proving insolvency in the bankruptcy sense." California Civil Code § 3439.02, Comment n. 3. Accordingly, the analysis of a debtor's general inability to pay debts under § 3439.02 relies on the case law interpreting Bankruptcy Code § 303(h)(1) (11 U.S.C.), which enumerates the general inability to pay debts as they become due as a ground for the filing of an involuntary bankruptcy petition. *See Id.* ("The case law that has developed under Section 303(h)(1) of the Bankruptcy Code has not required a showing that a debtor has failed or refused to pay a majority in number and amount of his or her debts in order to prove general nonpayment of debts as they become due.")

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   admission is evidence the Debtor was not paying his debts as they became due and sufficient to

2   shift the burden to Defendants to prove the Debtor was paying his debts. Defendants submit no

3   evidence.

4     It is an undisputed fact that three other properties in addition to the Highland Property were

5   in arrears and under the threat of default. (Id., ASOF 75-85).  In addition to the notices of default,

6   numerous properties were in arrears such that they were subject to an Election to Sell Under Deed

7   of Trust. (Id., ASOF 83, 84).  *See United States v. Dubey*, 1998 U.S. Dist. LEXIS 17512, *21

8   (E.D. Cal. 1998) (taxpayers not paying their taxes as they became due are presumed to have been

9   insolvent at the time of the transfer).  Defaults on real property obligations are material as they

10  jeopardize a major asset class and risk acceleration of debt and thus are a major indicator of

11  inability to pay one's debts.  *See Sarigianides v. Micromark Internat., Inc.*, 2009 Cal. Super.

12  LEXIS 3408, *10 (Micromark stopped paying property taxes and attorney's fees which creates a

13  presumption of insolvency under Cal. Civil Code § 3439.02(c)).  The Opposition asserts that two

14  of the properties were owned by BADCO based on the record title. (Opp., pg 19, ln 12).  It is an

15  uncontroverted fact that the Poinsettia Property was owned by the Debtor as of July 30, 2018. (Id.,

16  JSOF, 35).  Mr. Shields notes that on February 18, 2021, **only days after the Transfer**, the

17  mortgage lender recorded a Notice of Default and Election to Sell Under Deed of Trust <u>to the</u>

18  <u>Debtor</u> for the Poinsettia property for failing to pay monthly mortgage obligations.  The past due

19  payments, plus permitted costs and expenses as of February 11, 2021, on the Poinsettia Property

20  was $121,189.54. (Dkt No. 49, ASOF 85; Dkt No. 51, ¶21).

21    The public records and the admissions in the record support the conclusion the Debtor was

22  not paying his debts on a timely basis as they came due.  This condition creates a presumption of

23  insolvency which the Defendants have <u>not</u> rebutted with admissible evidence. The sixth badge of

24  fraud is satisfied.

25    **(7)  Whether the Transfer Occurred Shortly Before or Shortly After a
    Substantial Debt was Incurred: §3439(b)(10)**

26

27    The Opposition contends this badge of fraud is not met. (Opp. pg. 20, ln 8).  Yet, the

28  Opposition submits no evidence to controvert the evidence offered by the Trustee, nor does it

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    submit evidence of its own.

2        Where a large verdict or judgment was issued shortly after a suspect transfer, courts do not

3    hesitate to find this badge of fraud satisfied.  *See Bay State Milling Co. v. Martin*, 2001 U.S. Dist.

4    LEXIS 3402*7, (N.D. Ill. 2001) (badge found as a result of litigation that ensued prior to the

5    transfer at issue and ultimately led to judgment for $200,000); *S. New Eng. Tel. Co. v. Sahara &*

6    *Arden, Inc.*, 2010 U.S. Dist. LEXIS 51178, *32(Dist. Nev. 2010) ($5 million lawsuit pending at

7    time of the transfer); *Stein v. Duenas* (2015) 2015 Tex. App. LEXIS 8502, *14 (transfer occurred

8    three months before debtor went to mediation and judgment was incurred which was deemed a

9    substantial debt incurred under Cal. Civ. Code § 3439.04(b)(10)); *Wolkowitz v. Beverly (In re*

10   *Beverly)*, 374 B.R. 221, 238 (9th Cir. 2007) (transfer was agreed upon in the midst of trial that led

11   to a $424,450 judgment).

12       The Defendants contend this badge is not satisfied as the Menlo and Vago verdicts were

13   not issued until August and September 2022, over a year and one-half after the Transfer.  It is an

14   uncontroverted fact, however, that both lawsuits were pending at the time of the Transfer. (Dkt.

15   No. 49, ASOF 42, 53, 55).  These debts were <u>incurred</u> prior to the Transfer.  The Transfer

16   occurred <u>only 10 months prior</u> to the start of trial in the Menlo litigation. (Dkt. No. 49; 44).  The

17   Debtor was found liable for $30,401,823 in damages even prior to phase III for the award of

18   attorney's fees and costs. (Dkt. No. 49; ASOF 110).  The Transfer was effectuated only months

19   prior to the start of the largest verdict against the Debtor.

20       The Seventh badge of fraud is satisfied.

21       The Motion has set forth credible evidence to establish seven badges of fraud which

22   evidence the Transfer was effectuated under fraudulent circumstances.

23   **I.    The Opposition Fails To Rebut Or Introduce Any Admissible Evidence To Rebut The**
     **Badges Of Fraud**

24

25       Once the badges of fraud are established, "the burden shifts to the transferee to prove some

26   legitimate supervening purpose for the transfers at issue," *Kelly v. Armstrong*, 141 F.3d 799, 802

27   (8th Cir. 1998) (internal citations omitted) (quoting *In re Acequia, Inc.*, 34 F.3d 800, 806 (9th Cir.

28   1994)), namely, that the transferee accepted the transfer in good faith and for value. *See Ritchie*

1  *Capital Mgmt., LLC v. Stoebner*, 779 F.3d 857 (8th Cir. 2015), citing to *In re Acequia, Inc.*, 34

2  F.3d 800, 806 (9th Cir. 1994). The defendant bears the burden of proof on this defense, and thus to

3  defeat the avoidance of a transfer on summary judgment, the defendant must offer affirmative

4  evidence sufficient to create a material issue of fact as to whether he took for value <u>and</u> in good

5  faith. *See In re Imperial Corp. of Am.*, No. 92-1003-IEG (LSP), 1997 U.S. Dist. LEXIS 20943, at

6  *8 (S.D. Cal. Aug. 12, 1997).

7  　　　(A) <u>Reasonable Equivalent Value</u>:

8  　　　Plaintiff incorporates herein by reference Section III., H(5), and the badge of fraud,

9  §3439(b)(8), which addresses the fact that the Transfer was not made for reasonably equivalent

10  value.

11  　　　(B) <u>Good Faith</u>:

12  　　　Because the Defendants provided no "value" as a matter of law, the Court need not

13  consider whether the Defendants were "good faith" transferees.  *See Kasolas v. Nicholson (In re*

14  *Fox Ortega Enters.)*, 621 B.R. 425, 468 (Bankr. N.D. Cal. 2021) (providing that "for value" and

15  "in good faith" is a conjunctive test); *see also*, e.g., *Warfield*, 436 F.3d 551, 560 (5th Cir. 2006)

16  (holding that because the broker defendant could not have provided value, "[w]e need not draw a

17  conclusion on good faith").  Regardless, the Defendants indisputably did not receive the Transfer

18  in good faith.

19  　　　The Opposition contends that the Motion must prove the Debtor had an intent to defraud or

20  must provide evidence of the Defendants' deliberate wrongful conduct. (Dkt No. 63, Opp., pg 33,

21  16).  The Plaintiff does not concede that is the correct legal standard, but if it was, the Motion

22  produced credible evidence of wrongful conduct.  Kenneth was untruthful in the two Uniform

23  Loan Applications filed with the lenders.  On November 4, 2020, and again on February 23, 2021,

24  in each application, he declared that there were no lawsuits pending against him. (Dkt No. 48,

25  JSOF 17, Ex. D; JSOF 24, Ex. G).  At the time, he was a named defendant in the Vago litigation.

26  (Dkt No. 49, ASOF 53).  He was not dismissed from the case until June 1, 2022.  (Dkt No. 48,

27  JSOF 36).

28  　　　The declaration was made under Title 18 United States Code, Sec, 1001 et seq. The mis-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   representation was made two times such that it cannot be explained as a slip of the pen. The

2   document was not something to be casually read or hastily completed as it was to be utilized to

3   obtain a mortgage. The misrepresentation was purposeful and was presumably done to expedite

4   the Transfer.  The Defendants cannot be found to have acted in good faith.

5        Good faith is not present "if the circumstances would place a reasonable person on inquiry

6   of a debtor's fraudulent purpose, and a *diligent* inquiry would have discovered the fraudulent

7   purpose." *Id.* at 536. A transferee does not act in good faith if he has sufficient knowledge to place

8   him on inquiry notice of the debtor's possible insolvency. *SEC v. Med. Capital Holdings*, 2014

9   U.S. Dist. LEXIS 90586, *9 (Dist. C.D. Cal. 2014), citing to *In re Moskowitz*, 10-73348-WLH,

10   2011 Bankr. LEXIS 4800, 2011 WL 6176210, at *13 (Bankr. N.D. Ga. Nov. 28, 2011); *see also In*

11   *re Nieves*, 648 F.3d 232, 238-39 (4th Cir. 2011) (stating that "a transferee does not act in good

12   faith when he has sufficient [actual] knowledge to place him on inquiry notice of the debtor's

13   possible insolvency").

14        Whether the Defendants were estranged from the Debtor or not, it is an uncontroverted fact

15   that as a named party to the Vago litigation, Kenneth was aware, or at a minimum, on inquiry

16   notice of, the Debtor's conduct. (Dkt No. 49, ASOF 53).  The complaint recites a laundry list of

17   theft, deception and fraud committed by the Debtor to the Hubert Scott, the Menlos, and the

18   Vagos.  *Id.*  Plaintiff stands by the deposition testimony of Kenneth wherein he referenced the bad

19   acts of the Debtor, the Vago litigation, and not wanting to "be connected to that." (Dkt No. 47,

20   Motion, pg 29)

21        Similarly, Shoshana knew about the Vagos' lawsuit too, and her husband being named in

22   it. (ASOF 107).  Shoshana knew the Menlos were major benefactors in the Jewish community of

23   which the Defendants were a part and who were talking about the Debtor's tortious conduct.

24   (ASOF 108).  Kenneth testified that he knew that his father was not paying the mortgage on the

25   Highland Property and it was in arrears. (ASOF 75; *see AAAG-California, LLC v. Kisana*, 553 F.

26   Supp. 3d 1042, 1049-50 (D. Utah 2021) (defendant, insider, who admitted knowing of pending

27   lawsuits and unpaid debts of transferor precluded from claiming protections of a "good faith"

28   transferee).

However, "good faith" is lacking here for an even more fundamental reason: the Defendants participated in the fraudulent transfer. A transferee does <u>not</u> act in good faith if he/she colludes with the debtor or otherwise participates in the debtor's fraudulent scheme. *Damian v. A Mark Precious Metals, Inc.,* 2017 U.S. Dist. LEXIS 216117*13-14 (C.D. Cal 2017). Similarly, an unlawful intent is presumed from the doing of an unlawful act. Cal Civ Code § 668. Like his father, Kenneth now claims that the grant deed the Debtor prepared and he signed and recorded with the County of Los Angeles was false. (ASOF 109). According to the Klein family, years later the Highland Property was not a "gift" but, rather, was exchanged for valuable consideration.

**J.    The Third Claim for Relief: The Transfer Was Constructively Fraudulent Under California Civil Code § 3439.04(a)(2)(B)**

The Transfer is also avoidable as a constructively fraudulent transfer. The Trustee may avoid any transfer of an interest of the debtor if the debtor (i) "without receiving reasonably equivalent value in exchange for the transfer," either:

(A)  Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(B)  Intended to incur, or believe or reasonably should have believed that the debtor would incur, debts, beyond the Debtor's ability to pay as they became due.    § 3439.04(a)(2)(A)-(B)

***First***, as discussed in detail in Section III. H(5) herein, as a matter of law, the Trustee is entitled to rely on the 2021 Grant Deed memorializing the Transfer as a "*bona fide* gift" and California law presumes "the grantor received nothing in return." It is an uncontroverted fact that the Debtor at all relevant times paid the mortgage, real property taxes and insurance. All indicia of ownership resided with the Debtor on the Highland Property. All documents the Debtor recorded after the acquisition of the Highland Property in August 2006 confirm the Debtor as the owner of both legal and equitable interests. As such, the Court need not even address the Defendants' attempt to enforce an oral agreement as the Debtor's conduct subsequent thereto (for example, paying mortgage and upkeep), is an indicia of ownership. (Dkt No. 48, JSOF 11-14). With the disappearance of the contention Debtor did not hold a beneficial interest at the time of the Transfer, not even an "argument" of an exchange of property remains. A property with an

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

appraised value of $3 million was transferred out of the estate for no consideration, let alone for reasonably equivalent value.  The Defendants have not carried their burden and the first element is satisfied.

**Second**, as set forth above in Section, III. H(6) herein, the inability to pay debts as they come due constitutes "insolvency" for purposes of the constructive fraudulent transfer test.  *See* 11 U.S.C. § 548(a)(1)(B)(ii); Cal. Civ. Code § 3439.02(b).  In addition, pursuant to Section 3439.04(a)(2)(B), a debtor's inability or lack of plan to satisfy long-term debt is evidence "the debtor would incur, debts, beyond the [d]ebtor's ability to pay as they became due." *See Heller Ehrman LLP. v. Jones Day (In re Heller Ehrman, LLP),* 2013 Bankr. LEXIS 889, *37-38 (law firm had nothing more than hope to resolve *Heller's* long-term obligations…and no present expectation to satisfy long term obligations does not satisfy objective test of § 3439.04(a)(2)(B) such that summary judgment on issue is proper.).  The Debtor subjectively knew, and the complaints in both the Vago and Menlo litigation made clear to any reasonable person, that fraud and punitive damages were alleged and a distinct possibility given the egregiousness of the alleged conduct. (Dkt No. 49, ASOF 41, 42, 53).  The Debtor had no plan other than abject denial. (Dkt No. 49, ASOF 57).  Thus, the evidence establishes that the Debtor knew he could not satisfy the obligation of either lawsuit and certainly not both. The debts were beyond his ability to pay when he transferred the Highland Property and constructively defrauding his creditors under California Civil Code § 3439.04(a)(2).

**IV.**

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the Motion, enter summary judgment to the Plaintiff, and grant such other and further relief as the Court deems just and proper.

1 Dated: December 18, 2024          PACHULSKI STANG ZIEHL & JONES LLP

2

3                                   By   */s/ Jeffrey P. Nolan*
                                         Jeffrey W. Dulberg
                                         John W. Lucas
4                                        Jeffrey P. Nolan

5
                                         Attorneys for Plaintiff, Bradley D. Sharp,
6                                        Chapter 11 Trustee

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4932-6171-2644.9 78512.001                          30